## 24242

Wendy Marie McCOURT, Deceased, By and Through her Personal Representative, Steven McCOURT, Respondent v. Glenn ABERNATHY, M.D., J.D. Clyde, M.D., Family Medicine Associates, P.A., Appellants.

(457 S.E. (2d) 603)

Supreme Court

*Gary C. Doyle, Anderson, G. Dewey Oxner, Jr.* and *Sally McMillan, Haynsworth, Marion, McKay & Guerard,* Greenville, *for appellant.*

*Michael E. Spears,* Spartanburg, *for respondent.*

Heard Dec. 8, 1994.

Decided May 1, 1995.

SHAW, Acting Associate Justice:

Respondent, Steven McCourt, as personal representative of the estate of his wife, Wendy Marie McCourt, brought wrongful death and survival causes of action against appellants, Glenn Abernathy, M.D., J.D. Clyde, M.D., and Family Medi-

cine Associates, P.A. The jury returned a verdict in favor of respondent for both actual and punitive damages against Dr. Albernathy and Dr. Clyde. The doctors appeal the denial of their motions for new trial and new trial *nisi*. We affirm.

## FACTS

The record discloses as follows. Twenty-three-year-old Wendy McCourt first sought treatment from the appellants in December, 1987. At that time, Dr. Abernathy obtained a history from Wendy revealing past liver problems and subsequently sought medical records from Dr. Truss, who had been Wendy's treating physician in Alabama. On Wednesday or Thursday, March 9 or 10, 1988 Wendy was injured while working with horses. There is evidence Wendy was seen by Dr. Abernathy in his office at that time and was treated for a pulled muscle.[1] On Sunday, March 13, her condition worsened and Wendy went to the Anderson Memorial Hospital emergency room. She was experiencing greater pain and had difficulty breathing. Dr. Clyde examined Wendy at that time and treated her for a pulled chest muscle. There is evidence Dr. Clyde treated the puncture wound to Wendy's finger at that time.[2] She was given prescriptions for Motrin and Co-Tylenol. She returned to her home.

The following day, March 14, Wendy's condition became significantly worse and she again sought treatment at the emergency room. She was examined by an emergency room physician who ran some blood tests. This physician indicated an immediate need to admit Wendy to the hospital. He telephoned Dr. Abernathy and was given permission to admit Wendy. At 6:30 that evening, Dr. Abernathy examined Wendy and ob-

---

[1] Steven McCourt testified he came home on the 9th or 10th and found Wendy icing down her chest. He further stated she was taking prescription muscle relaxant medication from sample packets. While Dr. Abernathy denied seeing Wendy at that time, in a "Death Summary" he indicated he had seen Wendy on the 9th, after an accident while working with horses, at which time she had a small puncture wound to her finger and complained of left chest wall pain. Dr. Abernathy testified he had made a mistake in dictating he had seen Wendy at that time.

[2] Steven McCourt testified Dr. Clyde pointed out the puncture wound on Wendy's finger which Dr. Clyde proceeded to clean and dress. He stated the finger was red and swollen to almost twice the normal size, and was having some sort of discharge. He further testified the wound was very noticeable and Wendy indicated it was a result of a pin prick that occurred a couple of days earlier.

served the injured finger, for which he prescribed Keflex, an oral antibiotic.

At 9:00 the following morning, both Dr. Abernathy and Dr. Clyde saw Wendy while making rounds at the hospital. By that time, Wendy's condition had worsened yet more and the doctors consulted Dr. Kovaz, an internist. Although appellants requested a consult from Dr. Kovaz, they did not express any urgency in his seeing her. After examining Wendy, Dr. Kovaz immediately moved her to the intensive care unit with a diagnosis of sepsis, a bacterial infection. Although treatment with intravenous antibiotics was begun at that time, her condition continued to deteriorate. Over the next 4 days, her skin began to slough off, her eyes filled with blood, her feet turned black, she bled from her nose, mouth and pores, and she became bloated beyond recognition. On March 19, 1988, Wendy McCourt died from beta strep septicemia with multiple organ system failure secondary to the sepsis.

Respondent presented expert testimony from Dr. Neal Craine and Dr. Kenneth DeHart. Dr. Craine stated Wendy's illness was caused by "an unfortunate circumstance where transient bacteria in the bloodstream landed in an area already traumatized by the injury with the horse." He testified, assuming, as the "Death Summary" indicates, Dr. Abernathy saw Wendy on the 9th, she had a puncture wound to the finger and it was known she was working around horses, he should have put her on preventive antibiotics on that day. He stated it would also have been below the standard of care for Dr. Clyde to have observed an infected finger on the 13th and not treat her with antibiotics nor order laboratory tests. He stated he felt Wendy had a 100% chance of survival on the 13th had she been started on antibiotics at that time. Based on the test results received on the afternoon of the 14th, he stated that a doctor should have suspected sepsis. He concluded Wendy's life could have been saved if antibiotics had been started on the 9th, which would have prevented or treated an early infection of the finger. He also stated, more likely than not, Wendy could have been saved on the 13th by treatment with antibiotics as well as on the 14th with aggressive antibiotic therapy. He stated it was also below the standard of care to wait until the 15th to call in a specialist.

Dr. DeHart likewise testified, assuming Wendy presented

with an infected finger on the 9th, failure to treat that prophy-
lactically fell below the standard of case. He stated, assuming
Wendy presented with an infected finger on the 13th, Dr.
Clyde's treatment fell below the standard of care by failing to
order lab tests, failing to immobilize the finger, and in failing
to start antibiotics. As to Dr. Abernathy's treatment on the
14th, he testified it was "profoundly below the standard of
care," not because he missed the diagnosis, but because he
failed to order aggressive observation and failed to request
consultation intervention.

This matter was tried to a jury and on January 7, 1993 the
jury returned the following verdicts for appellant:

> (1) Wrongful death action: Actual damages—$200,000
> against Dr. Abernathy and $100,000 against Dr. Clyde;
> Punitive damages—$500,000 against Dr. Abernathy and
> $250,000 against Dr. Clyde.
> (2) Survival action: Actual damages—$500,000 against Dr.
> Abernathy and $250,000 against Dr. Clyde; Punitive dam-
> ages—$500,000 against Dr. Abernathy and $250,000
> against Dr. Clyde.
> TOTAL VERDICTS: $2,550,000.

On appeal, the appellants contend the trial judge erred in
(1) denying their motions for a new trial based on the failure
of the court to charge several requested jury instructions; (2)
denying their motions for a new trial absolute or new trial *nisi*
based on the excessiveness of the verdict; and (3) denying
their motions for a new trial on the grounds their due process
rights were violated.

### FAILURE TO CHARGE

Appellants first contend the trial judge erred in failing
to charge several jury instructions relating to mistake
in diagnosis or error in judgment in a medical malprac-
tice cause of action.[3] We disagree. We first note the appellant
either cites no case law either from South Carolina or other

---

[3] Oral request # 1: When a physician exercises ordinary care and skill in
keeping within recognized and proven methods, he is not liable for the result
of a bona fide mistake of judgment. There is no responsibility unless it is neg-
ligent, as I have defined that to you so as to be inconsistent with that degree
of skill which is the duty of every physician practicing in his specialty to pos-
sess and use.

states to support the specific requested charges, or the South Carolina case law cited does not support the language sought to be included in the charge. The trial judge is required to charge only the current and correct law of South Carolina. *State v. Robinson*, 306 S.C. 399, 412 S.E. (2d) 411 (1991). Further, we note the requested charges may have a tendency to confuse the jury. Some of the charges imply to the jury that an error in judgment is actionable only if made in bad faith. Such an instruction would impose an unrealistic burden on the plaintiff to prove the doctor's judgment was rendered with less than good faith.

Finally, the appellants assert all of the charges stand for the proposition that a physician is not liable for a mistake in diagnosis or error in judgment if he acts within the appropriate standard of care. To warrant reversal for refusal to give a requested instruction, the refusal must have not only been erroneous, but prejudicial as well. *Sherer v. James*, 286 S.C. 304, 334 S.E. (2d) 283 (Ct. App. 1985), rev'd on other grounds, 290 S.C. 404, 351 S.E. (2d) 148 (1986). Refusal to give a properly requested charge is not error if the general instructions are sufficiently broad to enable the jury to understand the law and the issues involved. *Waldrup v. Metropolitan Life Ins. Co.*, 274 S.C. 344, 263 S.E. (2d) 652 (1980).

---

Oral request # 2: A physician is not ordinarily liable for making an incorrect diagnosis where it is made in good faith and there is reasonable doubt as to the nature of the physical condition involved or as to what should be done in accordance with recognized authority and good current practice, or where it is made in good faith observation of a patient and based upon physical evidence and symptoms which would warrant such a diagnosis by a reasonably prudent and informed physician.

Request # 5: A physician cannot be held liable for a mere error in judgment. Where, according to standard medical practice, the diagnosis and course of treatment involved are matters to be subjected to the judgment of the physician, a physician must be allowed the exercise of that judgment and he cannot be held liable if in the exercise of that judgment he has made a mistake as to the course of treatment to be taken.

Request # 13: Ladies and Gentlemen, when a physician exercises ordinary care and skill in keeping within recognized and proven methods, he is not liable for the result of a mere mistake of judgment or for a bad result which does not occur because of any negligence on his part. There is no responsibility for error of judgment or for a bad result unless it is so negligent as to be inconsistent with that degree of skill which it is the duty if every practitioner practicing in the specialty to possess.

In instructing the jury on the burden of proof of the plaintiff and the standard of care required of the defendants, the trial judge gave the following relevant charges.

The material elements of a medical malpractice action require the plaintiff to prove to your satisfaction as jurors by the greater weight or preponderance of the evidence and present evidence of the generally recognized practices and procedures which would be exercised by ordinary competent practitioners in a defendant doctor's field of medicine under the same or similar circumstances, and then to present evidence that a defendant doctor negligently departed from those recognized and generally accepted standards, practices, and procedures in the manner alleged by the plaintiff; and, in addition, to proving that a physician was in some way negligent, the plaintiff must also prove that a physician's negligence was a proximate cause of the plaintiff's injuries and/or death.

. . . .

The mere fact that the plaintiff's expert may use a different approach is not considered a deviation from the recognized standard of medical care. Nor is the standard violated because the expert disagrees with a defendant as to what is the best or better approach in treating a patient. Medicine is an inexact science, and generally qualified physicians may differ as to what constitutes a preferable course of treatment. Such differences to preference under our law do not amount to malpractice.

I further charge you that the degree of skill and care that a physician must use in diagnosing a condition is that which would be exercised by competent practitioners in the defendant doctor's field of medicine. In South Carolina the question of whether a physician, in making a diagnosis deviated from the applicable standard of case either by not employing a particular procedure or by not ordering a particular test is to be determined by what an ordinary careful and prudent physician would have done under the same or similar circumstances.

. . . .

Negligence may not be inferred from a bad results. Our

law says that a physician is not an insurer of health, and a physician is not required to guarantee results. He undertakes only to meet the standard of skill possessed generally by others practicing in his field under similar circumstances.

Even if we were to assume the appellants' requested charges were the current and correct law of the state, we find the instructions as a whole clearly intimate that a mere mistake in diagnosis or error in judgment alone is insufficient to support a finding of malpractice. Accordingly, we find no error.

## EXCESSIVE DAMAGES

Appellants next contend the trial judge erred in denying their motions for new trial absolute or, in the alternative, new trial *nisi* on the basis of the excessiveness of the punitive damages awards. They contend the damages are excessive and, because there was no evidence of conduct rising to the level of recklessness, the verdict was the results of passion and prejudice. We disagree.

In order for a plaintiff to recover punitive damages, there must be evidence the defendant's conduct was wilful, wanton, or in reckless disregard of the plaintiff's rights. *Scott v. Fruehauf Corporation,* 302 S.C. 364, S.E. (2d) 354 (1990). A conscious failure to exercise due care constitutes wilfulness. *Id.* The trial judge alone has the power to grant a new trial *nisi* when he finds the amount of the verdict to be merely inadequate or excessive and the denial of such a motion will not be reversed on appeal absent an abuse in the trial judge's discretion. *O'Neal v. Bowles,* 310 S.C. 483, 431 S.E. (2d) 555 (1993). The Trial judge should grant a new trial based on excessiveness of the verdict only if the amount is not merely different from that which he would have awarded, but is so grossly excessive so as to shock the conscience of the court and clearly indicates the figure reached was the result of caprice, passion, prejudice, partiality, corruption, or other improper motives. *Rush v. Blanchard,* 310 S.C. 375, 426 S.E. (2d) 802 (1993).

We find the record before us contains evidence that both Dr. Abernathy and Dr. Clyde consciously failed to exercise due care in treating Wendy. This evidence includes, but is not limited to: (1) failure to properly diagnose

and treat Wendy within the standard of case in three separate occasions; (2) failure to order timely diagnostic tests in light of continual complaints and no improvement of Wendy's condition; (3) failure to appreciate the seriousness of Wendy's deteriorating condition in the face of highly abnormal blood work; (4) failure to aggressively monitor Wendy's deteriorating condition; and (5) failure to promptly seek the immediate aid of a specialist once the seriousness of Wendy's condition became apparent. While the evidence indicates more severe degree of culpability on the part of Dr. Abernathy than Dr. Clyde, the record contains sufficient evidence of conduct on the part of both doctors to support the awards of punitive damages. The jury's determination of damages is entitled to substantial deference. *Rush* at 805. We find no abuse of the trial judge's discretion in this respect.

## DUE PROCESS

Appellants contend the trial judge erred in failing to instruct the jury on the factors to be included in post-trial review as enunciated in *Gamble v. Stevenson*, 305 S.C. 104, 406 S.E. (2d) 350 (1991). We disagree.

In *Gamble*, this court found the award of punitive damages as guided by the trial court was sufficiently reasonable to withstand constitutional challenge. The instructions of the trial judge there included: the degree of recklessness requisite to a punitive damage award; that such an award was to punish a defendant, or to deter or stop him and others from similar conduct in the future; that it must find actual damages before awarding punitive damages; and in calculating the amount of such damages, it may consider the defendant's ability to pay. In the instant case, the trail judge likewise instructed the jury on all these aspects of a punitive damage award.

Nowhere in *Gamble* did we require the factors to be considered in posttrial review of a punitive damage award be included in the jury charge. We therefore find the trial judge properly instructed the jury pursuant to *Gamble*.[4]

---

[4] We further note the record fails to show the appellants requested any such charge to the jury. *See Friedman v. Fludas*, 122 S.C. 153, 115 S.E. 200 (1922) (no error may be predicated on failure of court to give charge which was not requested). Nor did appellants raise this issue in their new trial motions. *See Degenhart v. Knights of Columbus*, 309 S.C. 114, 420 S.E. (2d) 495 (1992) (issue which is neither ruled on by trial court nor raised in posttrial motion is not properly preserved for appeal).

Appellants also contend the trial judge's posttrial review as mandated by Gamble did not support the jury's award of punitive damages. We disagree. The trial judge separately listed and addressed the the eight factors required in a posttrial review. The amount if damages, actual or punitive, is largely within the discretion of the jury, as reviewed by the trial judge, and review by this court is limited. *Gamble* at 355. We find no error.

Affirmed.

CHANDLER, C.J., and FINNEY, TOAL and WALLER, JJ., concur.