538 S.E.2d 291

Isaac **HOWARD**, Respondent,

v.

**SOUTH CAROLINA DEPARTMENT OF HIGHWAYS**, Appellant.

No. 3253.

Court of Appeals of South Carolina.

Submitted July 21, 2000.

Decided Oct. 9, 2000.

Rehearing Withdrawn Nov. 25, 2000.

James B. Jackson, Jr., of Yarborough, Hutto & Jackson, of Orangeburg, for appellant.

Fleet Freeman, of Freeman & Freeman, of Mt. Pleasant, for respondent.

PER CURIAM:

The South Carolina Department of Highways (Highway Department) appeals from a jury verdict in favor of Isaac Howard arising from the collision of Howard's logging truck with a Highway Department lawn-mowing tractor. We affirm.[1]

## FACTS AND PROCEDURAL HISTORY

Isaac Howard, a veteran truck driver, was hauling a load of freshly harvested timber to a lumber mill on May 5, 1995, when he saw a Highway Department tractor with a rear mounted mowing machine cutting grass along the right-hand side of the road directly ahead of him. Both vehicles were

---

1. Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

traveling in the same direction towards a roadway bridge. Howard noticed that a portion of the mowing deck extended onto the paved surface of his lane so he moved to the left in order to pass the tractor without striking the mowing deck. Just as Howard began to overtake the tractor, it abruptly swerved from the shoulder into his lane and proceeded across the bridge. Although Howard applied his brakes and moved completely into the opposite lane of travel, the bridge was not wide enough to allow Howard to pass the tractor without striking the rear of the mower deck. The accident severely injured Howard and caused extensive damage to his truck.

Although Howard admits to seeing the tractor as it approached the bridge, he maintains that he thought it would remain off to the side of the road until he passed, then it would raise its mowing deck and cross the bridge. "I've seen plenty times when [Highway Department tractors] get to bridges and stuff like that, they stop, they [raise their mowing decks], and they proceed on the other side of the road, going down the road, but they don't leave [the mowing deck] down and cross out there in front of somebody . . . ."

Fred Wright Jr. operated the tractor for the Highway Department. He testified that on the day in question, he was cutting grass along the side of the roadway when he approached the bridge. Wright maintains he looked over his shoulder twice before easing onto the roadway so that he could cross the bridge. "When I got halfway across the bridge, I hear a horn. I could tell it was a big truck behind me. I was too scared to look back so I just grabbed hold of the wheel and was waiting for the impact."

The jury returned a verdict in favor of Howard in the amount of $193,445 in actual damages. This appeal followed.

## LAW/ANALYSIS

### *The Highway Department's Statutory Exemption*

■ The Highway Department argues the trial court erred by allowing the jury to decide its negligence because S.C.Code Ann. § 56–5–800 "place[s] the burden on the motoring public to avoid persons who are engaged in work upon a highway" and exempts Highway Department vehicles and personnel

from the "statutory requirements for yielding the right-of-way, entering a roadway and other standard traffic laws" while "engaged in work upon a highway." Specifically, the Highway Department maintains that it "and Mr. Wright owed no duty to keep a proper lookout or other traffic duties," and, therefore, they could not be found negligent in causing the accident. We disagree.

Section 56–5–800 states, in pertinent part, that certain provisions of the Uniform Act Regulating Traffic on Highways "shall not apply to persons, motor vehicles and other equipment while actually engaged in work upon a highway ...." While this statute has never been interpreted by a court of this State, its predecessor, § 46–290, Code of Laws 1962, was interpreted.[2] Our supreme court held that, by operation of § 46–290, the operator of a Highway Department motor grader "violated no statutory duty by stopping it in the north bound lane of travel and, *under the facts which have been stated,* no reasonable inference of negligence arises therefrom." *Taylor v. South Carolina State Highway Dep't,* 242 S.C. 171, 180, 130 S.E.2d 418, 423 (1963) (emphasis added).

The *Taylor* holding encompasses two distinct propositions. First, the court found that the Highway Department's grader did not violate the statutory prohibition against "stopping or parking a vehicle on the main traveled part of a highway" because § 46–290 exempts Department personnel and machinery from that prohibition while they are engaged in road work, as was the case with the grader. Secondly, the Court determined the grader's operator was not negligent under the circumstances of the case. The second proposition demonstrates that the court reviewed the record for actionable negligence on the part of the Highway Department despite its exemption from statutory traffic duties. It is not a pro-

---

2. Textually, the two statutes are very similar. *Compare* S.C. Code Ann. § 56–5–800 (1976) ( [T]he provisions of this chapter ... shall not apply to persons, motor vehicles and other equipment while actually engaged in work upon a highway but shall apply to such persons and vehicles when traveling to or from such work.), *with* § 46–290, Code of Laws 1962 ("The provisions of this chapter shall not apply to persons, teams, motor vehicles and other equipment while actually engaged in work upon the surface of a highway, but shall apply to such persons and vehicles when traveling to or from such work.").

nouncement that the Highway Department owes no duty, statutory or otherwise, to the motoring public when engaged in work on a road. *Taylor* merely stands for the proposition that the duty owed by the Highway Department to the motoring public must be determined outside of the context of the traffic duties codified in certain sections of the Uniform Act Regulating Traffic on Highways.[3]

Ordinarily, the violation of a traffic statute establishes the *per se* negligence of the offending driver. *Wise v. Broadway*, 315 S.C. 273, 433 S.E.2d 857 (1993); *Locklear v. Southeastern Stages, Inc.*, 193 S.C. 309, 8 S.E.2d 321 (1940); *Seals by Causey v. Winburn*, 314 S.C. 416, 445 S.E.2d 94 (Ct.App.1994). If the violation is the proximate cause of an injury or property damage, then the injured party may maintain a negligence action against the offending driver. *Whitlaw v. Kroger Co.*, 306 S.C. 51, 410 S.E.2d 251 (1991); *Ready v. Barnwell County*, 167 S.C. 62, 165 S.E. 676 (1932); *Ott v. Pittman*, 320 S.C. 72, 463 S.E.2d 101 (Ct.App.1995). Obviously, the Highway Department must be exempt from this two-step analysis as its equipment and personnel must routinely violate traffic statutes to maintain our roadways. Section 56–5–800 provides the needed exemption and denies *per se* negligence to potential claimants which forces them to prove negligence in the specific context of roadway repair operations. In this action, the trial court properly refused to charge any traffic statutes thereby forcing the plaintiff to establish negligence within the context of the accident *sub judice*. Accordingly, the trial court did not err in refusing to direct a verdict for the Highway Department. *See Steinke v. South Carolina Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999) ("The trial court must deny [directed verdict] motions when the evidence yields more than one inference or its inference is in doubt."); *Holtzscheiter v. Thomson Newspapers, Inc.*, 332 S.C. 502, 513, 506 S.E.2d 497, 503 (1998) ("A directed verdict on liability is properly

---

3. The other case relied on by the Highway Department, *Truesdale v. South Carolina Highway Dep't*, 264 S.C. 221, 213 S.E.2d 740 (1975), *overruled by McCall v. Batson*, 285 S.C. 243, 329 S.E.2d 741 (1985), is inapplicable to the instant action as the Highway Department personnel and equipment in *Truesdale* were not engaged in road work at the time of the accident.

denied where there is any evidence, direct or circumstantial, justifying submission of the issue to the jury.").

Even if we were to find the trial court erred by not charging the specific language of § 56–5–800, the error would be harmless as the court's instructions encapsulated the content of § 56–5–800 and there is nothing in the record to suggest that omitting the statutory language affected the verdict. *See Keaton v. Greenville Hosp. Sys.*, 334 S.C. 488, 498, 514 S.E.2d 570, 575 (1999) ("In order to find the error [in charging the jury] harmless, [an appellate court] must determine beyond a reasonable doubt that the error complained of did not contribute to the verdict."); *McCourt v. Abernathy*, 318 S.C. 301, 306, 457 S.E.2d 603, 606 (1995) ("Refusal to give a properly requested charge is not error if the general instructions are sufficiently broad to enable the jury to understand the law and the issues involved.").

### *Assumption of Risk*

■ The Highway Department argues the trial court erred by failing to charge the jury on assumption of risk because Howard admitted to seeing the Highway Department's tractor working along the side of the road before he collided with it. We disagree.

■ Assumption of risk is an affirmative defense.[4] *Creighton v. Coligny Plaza Ltd. Partnership*, 334 S.C. 96, 512 S.E.2d 510 (Ct.App.1998); *Wilson v. Childs*, 315 S.C. 431, 434 S.E.2d 286 (Ct.App.1993); *Broom v. Southeastern Highway Contracting Co.*, 291 S.C. 93, 352 S.E.2d 302 (Ct.App.1986). Affirmative defenses are waived if not pled. *Varn v. South Carolina Dep't of Highways and Pub. Transp.*, 311 S.C. 349, 428 S.E.2d 895 (Ct.App.1993); *D & D Leasing Co. v. David Lipson, Ph.D., P.A.*, 305 S.C. 540, 409 S.E.2d 794 (Ct.App. 1991). In the instant action, the Highway Department waived its right to assert the defense as it failed to raise it in its answer. *See* Rule 8(c), SCRCP ("In pleading to a proceeding

---

4. Although assumption of the risk is no longer recognized as a complete defense in a negligence action, it remains a facet of comparative negligence which may be charged to the jury. *Davenport v. Cotton Hope Plantation Regime*, 333 S.C. 71, 508 S.E.2d 565 (1998).

pleading, a party shall set forth affirmatively the defense [of] . . . assumption of risk.").

### Burden Shifting

█ Finally, the Highway Department argues the trial court's jury instruction impermissibly shifted the burden of proof from the plaintiff to the defendant because the court "spent substantial time [charging] the jury in this matter telling them that if it was not safe for Mr. Wright to have pulled out onto the bridge when he did, then Mr. Wright was negligent."

█ We will not reverse a trial court's instruction to a jury unless the court has abused its discretion. *Dalon v. Golden Lanes, Inc.*, 320 S.C. 534, 466 S.E.2d 368 (Ct.App. 1996); *Smith v. Ridgeway Chemicals, Inc.*, 302 S.C. 303, 395 S.E.2d 742 (Ct.App.1990). "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *Clark v. Cantrell* 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000).

█ In order to sustain an action for negligence, the plaintiff must demonstrate that the defendant breached a duty of care he or she owed to the plaintiff. *Steinke*, 336 S.C. 373, 520 S.E.2d 142; *Bishop v. South Carolina Dep't of Mental Health*, 331 S.C. 79, 502 S.E.2d 78 (1998). In the context of operating an automobile, a defendant owes both statutory and common law duties to other motorists. As discussed earlier, the Highway Department is exempt from statutory duties pursuant to § 56–5–800. Accordingly, the court instructed the jury on common law standards and instructed the jury to consider whether Wright's operation of the tractor was negligent in light of those standards. "If it wasn't *reasonable* for [Wright] to pull out [in front of Howard] like that, then [Wright] was negligent. But if it was *reasonable*, then [Wright] wasn't negligent." (Emphasis added). Such an instruction did not shift the burden to the defendant; rather, it merely framed the jury's inquiry as a single question.

For the aforementioned reasons, the decision of the trial court is

**AFFIRMED.**

HEARN, C.J., CURETON and CONNOR, JJ., concur.