584 S.E.2d 405

**Gloria COLE and George DeWalt, Jr., in their capacities as Personal Representatives of the Estate of George Ernest Cole, deceased, Appellants,**

v.

**SOUTH CAROLINA ELECTRIC AND GAS, INC., Respondent.**

**No. 3650.**

Court of Appeals of South Carolina.

Heard Oct. 9, 2002.

Decided June 9, 2003.

Rehearing Denied Aug. 21, 2003.

F. Xavier Starkes and William T. Toal, both of Columbia, for Appellants.

Robert A. McKenzie and Gary H. Johnson, II, both of Columbia, for Respondent.

CONNOR, J:

Gloria Cole and George DeWalt, Jr., (Cole) brought suit in their capacities as Personal Representatives of the Estate of George Ernest Cole, deceased, against South Carolina Electric and Gas (SCE & G) for causes of action arising out of the drowning of George Cole at a Lake Murray recreation site owned by SCE & G. Cole filed this appeal challenging the trial court's pretrial order finding the parking fee charged by SCE & G was not a charge as defined under the Recreational Use Statute (RUS).[1] Cole also challenges various rulings made during the trial of the case. We affirm in part, reverse in part and remand.

## FACTS/PROCEDURAL HISTORY

George Cole and three other individuals visited a recreational beach area located at Lake Murray on land owned by SCE & G. At the entrance to the area, automobiles wishing to park are required to pay three dollars. The driver of the car in which George was a passenger paid the fee.

---

1. S.C.Code Ann. §§ 27–3–10 to –70 (1991).

The recreational site is fenced-in and is patrolled by a security guard. There are no lifeguards on duty at the lakefront nor is safety equipment present at the site. The swimming area is roped off with buoy lines. Warning signs on the property indicate there are no lifeguards on duty and that individuals swim at their own risk. After paying for parking, a similar written notice is handed to the patrons.

George entered the water, swam to the buoy line, and drowned while attempting to return to shore. Other swimmers and paramedics, who were called to the scene, attempted to revive him but were unsuccessful.

The complaint alleged causes of action for negligence, nuisance, and unreasonably dangerous activity. SCE & G answered and asserted as defenses, among other things, the RUS, assumption of risk, accident, and comparative negligence. Following amendments to the pleadings, SCE & G moved for summary judgment.

The trial court granted SCE & G's motion for summary judgment on Cole's causes of action for nuisance and unreasonably dangerous activity and denied summary judgment on the negligence cause of action. In a subsequent order, the court clarified its initial ruling. The court found the parking fee was not a "charge" as contemplated under the RUS. Thus, the court granted partial summary judgment for SCE & G on the negligence cause of action. This ruling required Cole to demonstrate gross negligence in order to find SCE & G liable.

At trial, Cole's expert witness testified George would not have died had a lifeguard been present at the site. The expert also testified the buoy line was located too far from shore and at an improper depth. Cole elicited testimony concerning whether SCE & G was subject to Department of Health and Environmental Control (DHEC) Regulation 61–50, requiring a lifeguard to be present at a public swimming area. Cole contended the regulation was applicable to the case and a violation of the regulation could be used as evidence of gross negligence.

The jury found in favor of SCE & G. Cole moved for judgment notwithstanding the verdict and, in the alternative, for a new trial. The trial court denied the motions and this appeal follows.

## LAW/ANALYSIS

### I. Recreational Use Statute

Cole first contends the trial court erred in granting partial summary judgment to SCE & G based on the RUS. The trial court ruled that SCE & G could still be found liable for gross negligence under section 27–3–60(a). However, given the court found as a matter of law that the parking fee was not a "charge," it ruled Cole was barred from pursuing judgment against SCE & G for simple negligence under section 27–3–60(b). Cole argues the three dollar parking fee was a "charge" as contemplated in section 27–3–60(b), and, therefore, SCE & G was not entitled to protection from liability for negligence under the RUS.

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Roof v. Swanson*, 344 S.C. 315, 543 S.E.2d 278 (Ct.App.2001). "In ruling on a motion for summary judgment, the evidence and the inferences which can be drawn therefrom should be viewed in the light most favorable to the non-moving party." *Baird v. Charleston County*, 333 S.C. 519, 529, 511 S.E.2d 69, 74 (1999). "Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law." *Lanham v. Blue Cross & Blue Shield of South Carolina, Inc.*, 349 S.C. 356, 362, 563 S.E.2d 331, 333 (2002).

The following facts are undisputed. Every vehicle entering SCE & G's recreation site is required to pay a per-vehicle parking fee.[2] The fee is not assessed on each person in an automobile. Rather, the fee covers every person riding in the vehicle. The driver of George Cole's party paid the parking fee upon entering the site. Access to the site is free to individuals who walk, swim, or ride a bike to the site. Drive-through traffic is prohibited and vehicles leaving the site are assessed an additional, identical fee upon re-entry.

---

**2.** The fee is assessed depending on the type of vehicle. Cars are assessed three dollars, motorcycles two dollars, and buses five dollars, to park at the site.

■ The RUS "encourage[s] owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." S.C.Code Ann. § 27–3–10 (1991). "Landowners owe 'no duty of care to keep the premises safe' for recreational users and need not 'give any warning of a dangerous condition, use, structure or activity' on the property." *Brooks v. Northwood Little League, Inc.*, 327 S.C. 400, 403, 489 S.E.2d 647, 648 (Ct.App.1997) (quoting S.C.Code Ann. § 27–3–30 (1991)).

Furthermore, an owner who permits a person to use property for recreational purposes without charge does not: "(a) Extend any assurance that the premises are safe for any purpose[;][or] (b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed." S.C.Code Ann. § 27–3–40 (1991). A "charge" is defined as "the admission price or fee asked in return for invitation or permission to enter or go upon the land." S.C.Code Ann. § 27–3–20(d) (1991). The only caveats, found in section 27–3–60, provide:

Nothing in this chapter limits in any way any liability which otherwise exists:

(a) For grossly negligent, willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

(b) For injury suffered in any case where the owner of land *charges* persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the State or a subdivision thereof, any consideration received by the owner for such lease shall not be deemed a charge within the meaning of this section.

S.C.Code Ann. § 27–3–60 (1991) (emphasis added).

South Carolina has not had the opportunity to determine whether a parking fee is a charge under section 27–3–60(b). The Supreme Court of Georgia considered this issue in relation to Georgia's Recreational Property Act in *Stone Mountain Mem'l Ass'n v. Herrington*, 225 Ga. 746, 171 S.E.2d 521 (1969). The Georgia court found that a two dollar parking fee

at Stone Mountain Park was not a "charge" [3] or admission fee removing the Memorial Association from the protection of Georgia's Recreational Property Act. *Id.* at 522–23. In affirming the trial court's grant of summary judgment to the defendant, the court found persuasive the following uncontroverted facts: (1) "[p]ersons on foot are not charged any fee, nor is a fee charged for a number of people in any one vehicle"; and (2) "[t]he fee is strictly a parking fee for the automobile to enter." *Id.* at 523.

The Georgia Court of Appeals has also examined this issue. In *Majeske v. Jekyll Island State Park Auth.*, 209 Ga.App. 118, 433 S.E.2d 304 (1993), the court held that a per-vehicle fee, not based on the number of occupants, and not charged to individuals entering by means other than motorized vehicle, was not a "charge" sufficient to remove the Authority from the protection of Georgia's Recreational Property Act. The court also determined that a re-entry fee did not transform what was strictly a parking fee into a "charge" for admission. *Id.* at 305–06; *cf. Hogue v. Stone Mountain Mem'l Ass'n*, 183 Ga.App. 378, 358 S.E.2d 852 (1987) (holding an initial four dollar fee allowing re-entry during the course of the patron's stay permitted the use of a vehicle in the park and did not constitute a charge for the recreational use of the park).

Similarly, in *Garreans v. City of Omaha*, 216 Neb. 487, 345 N.W.2d 309 (1984), a park charged patrons fees for the right to park campers and pitch tents, and for the use of camper dumping facilities. However, those generally entering the park paid nothing. The Nebraska statute defined "charge" as "the amount of money asked in return for an invitation to enter or go upon the land." *Id.* at 313. The court, in holding the fee paid by the plaintiff's grandmother was not a charge for entry upon the land, determined "that in order to constitute a charge, any moneys paid must be paid for the right to enter the facility." *Id.*

We find these decisions to be highly persuasive and agree that a parking fee assessed only to those entering by motor vehicle, and on a per-vehicle basis, does not constitute a

---

**3.** At all times relevant to this discussion the Georgia Recreational Property Act's definition of "charge" has been identical to South Carolina's definition of the same term.

"charge" under section 27–3–60(b). The undisputed evidence demonstrates only that the fee is purely for the privilege of using a motorized vehicle at the site and is not related to the admission of individuals to the recreation site and is not imposed in return for recreational use of the site. *Herrington*, 171 S.E.2d at 522–23; *Hogue*, 358 S.E.2d at 854; *see also Jones v. United States*, 693 F.2d 1299 (9th Cir.1982) (applying Washington law and holding a landowner may charge a fee for something other than use of the land, and still enjoy recreational use immunity). Accordingly, the circuit court properly determined as a matter of law that the RUS operated to prevent Cole from recovering from SCE & G based on allegations of simple negligence.

## II. Applicability of DHEC Regulation

Cole next contends that 24A S.C.Code Ann. Regs. 61–50 (1992),[4] was applicable to the facts of the case. Regulation 61–50 generally requires the use of lifeguards and safety equipment at natural public swimming areas. Cole argues the trial court's jury instruction was erroneous because it did not mandate application of the regulation, but instead allowed the jury to determine whether the regulation applied to the recreation facility.

The trial court must charge the current and correct law. *McCourt v. Abernathy*, 318 S.C. 301, 457 S.E.2d 603 (1995). " 'In reviewing jury charges for error, we must consider the court's jury charge as a whole in light of the evidence and issues presented at trial. If, as a whole, the charges are reasonably free from error, isolated portions which might be misleading do not constitute reversible error.' " *Keaton ex rel. Foster v. Greenville Hosp. Sys.*, 334 S.C. 488, 497, 514 S.E.2d 570, 575 (1999) (quoting *Bragg v. Hi–Ranger, Inc.*, 319 S.C. 531, 547, 462 S.E.2d 321, 330 (Ct.App. 1995)); *see also Waldrup v. Metro. Life Ins. Co.*, 274 S.C. 344, 346, 263 S.E.2d 652, 654 (1980) (finding appellate court must view the jury charge as a whole before assigning prejudicial error to a discrete portion of the charge).

---

4. Regulation 61–50 was amended in 1999. All references to Regulation 61–50 are to the version in effect at the time of the drowning in 1997.

During arguments on the applicability of Regulation 61–50 to the facts of this case, SCE & G tried to show that an administrative order exempting it from enforcement of the regulation's prior version was also applicable to the regulation in effect at the time of the drowning because DHEC had never attempted to enforce its provisions. The trial court indicated during the charge conference that it would charge the jury that they could consider the exemption order and DHEC's lack of enforcement in determining whether the regulation was applicable to SCE & G's recreation site. Cole objected, stating the court should decide as a matter of law whether the regulation applied.

Notwithstanding its previous indication, the trial court did not address the administrative order during its charge on the regulation. In charging the jury, the trial court began:

Now in addition to the statutory elements of this negligence case which I have just read to you, I'm also going to instruct you as to other regulations which may or may not apply in this particular case. You and you alone are the judge of the facts and you will determine whether or not these regulations have been violated, and if you determine from the facts that they have been violated, then you will apply the law as I give it to you.

While the trial court begins by saying the regulations may or may not apply, it clearly instructs the jury that its function is to determine if the regulations as explained were violated by SCE & G, and if violated then the jury must apply the law as pronounced. The court then instructs the jury regarding the requirements of Regulation 61–50, including lifeguard requirements, proper warning signage, swimming area barriers, and safety equipment. The trial court never explained how the jury would determine whether the regulation applied.

The trial court concluded with the following instructions:

Ladies and Gentlemen, violation of any of the provisions of these regulations is negligence that is a matter of law.

This means that proof of such violation is in and of itself proof of negligence. But before you can hold the defendant liable, you must determine not only that the defendant was negligent, but that it was grossly negligent as provided in the statute. While evidence of a statute, evidence of a

violation of a statute or regulation constitutes negligence, such violation by itself does not constitute gross negligence or recklessness, wilfulness, or wantonness.

However, it may constitute evidence of these things, and you may consider such violation along with other facts and circumstances surrounding the event to determine whether or not the defendant was grossly negligent, recklessness [sic], wilful or wanton.

Given Regulation 61–50 defines safety and health considerations for natural public swimming areas the trial court should have decided as a matter of law whether Regulation 61–50 applied to the facts of this case. *See Steinke v. South Carolina Dep't of Labor, Licensing, & Regulation,* 336 S.C. 373, 387–8, 520 S.E.2d 142, 149 (1999) (stating an affirmative legal duty may be created by statute and the court must determine as a matter of law whether the law recognizes a particular duty); *Miller v. City of Camden,* 317 S.C. 28, 31, 451 S.E.2d 401, 403 (Ct.App.1994), *aff'd as modified,* 329 S.C. 310, 494 S.E.2d 813 (1997) (stating the existence and scope of a duty is a question of law; thereafter, the jury determines whether a breach of the duty has occurred); *see also Stewart v. Richland Mem'l Hosp.,* 350 S.C. 589, 593, 567 S.E.2d 510, 512 (Ct.App. 2002) (stating the applicable standard of care under the Tort Claims Act was a question of law where the pleadings placed the case squarely within the statutory language). However, any error is harmless given the tenor of the overall charge. The entire charge as given leaves it up to the jury to decide whether the regulation was violated, not whether it actually applied to SCE & G. The trial court instructed the jury on the ramifications of its decision if it found a violation to have occurred, requiring the jury to consider the violation as evidence of negligence in determining whether SCE & G was grossly negligent. As such, the trial court's charge on the regulation did not prejudice Cole. *See Waldrup,* 274 S.C. at 346, 263 S.E.2d at 654 (finding a charge must be construed and considered as a whole before an assignment of prejudicial error will lie for the discrete portion complained of). The trial court did not provide the jury any criteria to establish whether the regulation applied. Rather, the jury was left to determine only whether a violation of the regulation had occurred.

### III. Assumption of Risk Instruction

Cole argues the trial court erred in failing to properly instruct the jury regarding the burden of proof on SCE & G's assumption of risk defense.

During the charge conference the trial court indicated it did not believe assumption of risk was an affirmative defense and therefore the burden would not shift to SCE & G to prove all the elements of this defense. SCE & G's counsel questioned this statement of the law by stating: "it is my understanding assumption of the risk is an affirmative defense." Cole's counsel then inquired whether the trial court planned to charge that Cole had the burden of showing that assumption of risk did not apply and also how the court was going to assign the burden concerning the assumption of risk defense. The court stated it would not place the burden on Cole and decided not "to tell [the jury] anything about a burden."

At the outset of the portion of the jury instruction discussing SCE & G's defenses the trial court stated:

> However, if you are satisfied that the Plaintiff has proven that the Defendant was grossly negligent as described in the Recreational Use Statute and that the Plaintiff was injured or damaged as a proximate result of that negligence, then you must consider the defenses that have been set forth by the Defendant.

The trial court then detailed several of the defenses asserted by SCE & G, including a general denial. The court stated that a general denial places the burden "upon the Plaintiff to prove each and every element of their cause of action." Turning to assumption of risk, the trial court listed the elements of the defense, but never specifically placed the burden of proving this defense upon SCE & G. Instead, the trial court stated:

> A Plaintiff who voluntarily assumes the risk of injury arising from the negligent conduct of the Defendant cannot recover for the injury.... If you find from the evidence that the Defendant was grossly negligent as alleged in the complaint but that the Plaintiff could've reasonably foreseen, expected or anticipated such negligence, then the Plaintiff will be held to have assumed the risk and your verdict must be for the Defendant.

After the jury charge, Cole objected to the trial court's failure to charge the burden of proof with regard to the assumption of risk defense.

■ The trial court must charge the current and correct law. *McCourt*, 318 S.C. at 306, 457 S.E.2d at 606. "A jury charge is correct if '[w]hen the charge is read as a whole, it contains the correct definition and adequately covers the law.' " *Keaton*, 334 S.C. at 495–96, 514 S.E.2d at 574 (quoting *State v. Johnson*, 315 S.C. 485, 487 n. 1, 445 S.E.2d 637, 638 n. 1 (1994)).

■ It is well established that a party pleading an affirmative defense has the burden of proving it. *Pike v. South Carolina Dep't of Transp.*, 343 S.C. 224, 540 S.E.2d 87 (2000); *Hoffman v. County of Greenville*, 242 S.C. 34, 129 S.E.2d 757 (1963). "When a defendant interposes an affirmative defense, he becomes as to that matter the actor in the suit, and the burden of proof rests upon him to establish his affirmative defense by the preponderance of the evidence." *Lorick & Lowrance, Inc. v. Julius H. Walker & Co.*, 153 S.C. 309, 318, 150 S.E. 789, 792 (1929).

■ "Assumption of risk is an affirmative defense." *Howard v. South Carolina Dep't of Highways*, 343 S.C. 149, 155, 538 S.E.2d 291, 294 (Ct.App.2000); *see also Wallace v. Owens–Illinois, Inc.*, 300 S.C. 518, 524, 389 S.E.2d 155, 158 (Ct.App. 1989) (stating "the affirmative defense of assumption of risk ordinarily presents a question of fact for the jury").[5]

■ The trial court committed reversible error by not placing the burden of proving the affirmative defense of assumption of risk with SCE & G in its jury charge. *See Ross v. Paddy*, 340 S.C. 428, 532 S.E.2d 612 (Ct.App.2000) (holding the trial court erred in not charging the jury that a defendant had the burden of proving the affirmative defense of comparative negligence). When viewed as a whole the court's instruction did not convey this burden to the jury. Instructing the

---

5. Cole's cause of action accrued prior to the decision in *Davenport v. Cotton Hope Plantation Horizontal Prop. Regime*, 333 S.C. 71, 508 S.E.2d 565 (1998). Therefore, the common law form of assumption of risk as it existed prior to *Davenport* applies to the present case. *Id.* at 87–8, 508 S.E.2d at 574.

jury to "consider" defenses set forth by a defendant is a far cry from stating that a defendant has the burden of proving the defense. Moreover, in light of the trial court's explanation of a general denial, the potential prejudice from failing to explain SCE & G's burden of proof is multiplied.

### IV. Limitation on Argument about "Making Money"

After Cole presented her first witness, SCE & G moved to strike any testimony relating to money paid at the site. The trial court did not grant this motion but did state that in light of the court's earlier ruling regarding the applicability of the RUS it would be inappropriate for Cole to argue SCE & G was making money at the site through the receipt of parking fees. Cole contends she is entitled to a new trial because the trial court erred in refusing to allow her to argue SCE & G was "making money" at the site and did not operate the site "out of the goodness of their hearts."

We decline to consider this argument because Cole's argument is not supported with citations of authority, and it is so conclusory as to be an abandonment of this issue on appeal. *First Sav. Bank v. McLean,* 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994); *see Glasscock, Inc. v. United States Fid. & Guar. Co.,* 348 S.C. 76, 557 S.E.2d 689 (Ct.App.2001) (stating short, conclusory arguments unsupported by authority are deemed abandoned). In any event, the trial court did not abuse its discretion by limiting questioning and argument on this point. Whether SCE & G made money from the parking fee was not relevant to any issue in the case. Moreover, Cole was able to elicit at least some testimony indicating SCE & G required a fee for parking at the site. Thus, whether SCE & G made money on the parking fees did not go completely unaddressed.

### CONCLUSION

Based on the foregoing analysis, the jury verdict in favor of SCE & G is reversed and we remand for a new trial. We affirm the trial court's grant of partial summary judgment to SCE & G based on the RUS.

**AFFIRMED IN PART, REVERSED IN PART, and RE-MANDED.**

ANDERSON and STILWELL, JJ., concur.