## 9200

### BALDWIN v. PIEDMONT MFG. CO.

#### (86 S. E. 379.)

MASTER AND SERVANT. ASSUMPTION OF RISK. CONTRIBUTORY NEGLIGENCE. ISSUES. CHARGE.

1. CONTRIBUTORY NEGLIGENCE—ISSUES.—Where the evidence fails to show there was a safe way in which a servant could have performed the task at which he was set by his master, it is for the jury to determine whether or not the servant was negligent in attempting to perform the task in an unsafe way.

2. CONTRIBUTORY NEGLIGENCE—ISSUES.—Where there is a conflict of testimony as to whether or not instructions as to how he should not perform his work were given a servant, it is for the jury to determine whether or not they were given, before determining whether he was negligent in violating them.

3. MASTER AND SERVANT—ASSUMPTION OF RISK.—Assumption of risk is an affirmative defense, which must be proven by a master pleading it.

4. MASTER AND SERVANT—INJURIES TO SERVANT—LIABILITY FOR OBVIOUS RISKS.—An employer is not liable for obvious risks caused by his negligence or those of which the servant knew.

5. MASTER AND SERVANT—INJURIES TO SERVANT—ACTION—QUESTION FOR JURY.—In an action by a cotton mill employee for injuries received when his hand was caught in a licker-in, question whether plaintiff's hand was jerked in through the machine's engaging with the cotton which he had gathered up in it *held* for the jury.

6. MASTER AND SERVANT—INJURIES TO SERVANT—ASSUMPTION OF RISK.— Where a cotton mill employee knew that his hand was in danger of

being jerked into a licker-in if he used it to remove waste from the machine, but did so nevertheless, he assumed the risk of injury.

7. MASTER AND SERVANT—INJURIES TO SERVANT—ASSUMPTION OF RISK—OBVIOUS RISK.—Where a cotton mill employee avoided the obvious danger of thrusting his hand in too far while gathering up cotton waste from a licker-in, and so was not injured by his voluntary act, but on account of the unforeseen action of the machine engaging with the cotton in his hand and jerking the hand into itself, plaintiff did not assume the risk of injury.

8. MASTER AND SERVANT—INJURIES TO SERVANT—ASSUMPTION OF RISK—GENERAL WARNING AND PROHIBITION.—Where a cotton mill employee was warned generally that there was danger in operating his machine, such danger not being specified, but he being forbidden to use his hand to gather up waste in any event, in so using his hand he assumed all risk of injury.

9. MASTER AND SERVANT—ASSUMPTION OF RISK.—Where the testimony tended to show that a servant's hand was jerked into a machine, upon which he was placed at work, and more than one inference could be drawn from the evidence, it was for the jury to determine whether or not he knew that his hand was liable to be jerked into the machine, or had been warned against this risk, and assumed it.

10. TRIAL — INJURIES TO SERVANT — ACTION — INSTRUCTION — CURE OF ERROR.—In a servant's suit for injuries, the Court charged that from the mere knowledge of a defect in a machine the inference should not be drawn, as a matter of law, that the plaintiff assumed the risks or was guilty of contributory negligence in working on the machine, unless the danger was so obvious that no person of ordinary prudence would have attempted the work, and that, if a servant knows that machinery is so dangerous that a person of ordinary prudence, knowing its condition, would not have worked on it, and nevertheless does so, he cannot recover. At defendant's request the Court charged that, if the jury believed that the plaintiff knew that the plate was off the machine on which he worked, that the effect was to accumulate lint in the opening, that to remove it with the hand while the machine was in operation was dangerous, that the teeth of the licker-in were liable to catch his hand, and knew of the location of the licker-in in dangerous proximity, the plaintiff assumed the risk of injury, and is not entitled to recover; the burden of proof being on the defendant to show that that was one of the risks the employee took, and that the defendant would not have to put up witnesses for itself, but could rely on plaintiff's testimony to make out a defense. Defendant contended that the first charge was erroneous, the application of the doctrine of assumption of risk not depending upon the question of the negligence of the servant as the charge required. *Held,* that any error was cured by the given request, as it did not restrict the defense to obvious risks, or to the general unsafe condition of the machine, or the effect of a warning.

11. MASTER AND SERVANT—INJURIES TO SERVANT—ASSUMPTION OF RISK—
CONTRIBUTORY NEGLIGENCE.—The defenses of assumption of risk and
contributory negligence are not necessarily separate and distinct;
and in working with defective machinery the assumption of risk is
based upon contributory negligence in working with the machinery
at all.

Before SHIPP, J., Greenville, November, 1914.　Affirmed.

Action by Floyd Baldwin, by J. H. Price, guardian *ad
litem,* against Piedmont Manufacturing Company.

The following statement of facts is taken from appellant's
argument:

"The plaintiff, eighteen years old, was employed in the
card room of the defendant.　There were 100 or more of
these carding machines in the mill and the plaintiff attended
to about 25 of them.　His duties were to keep them oiled,
cleaned and in proper operation.　The machine is a very
large one, composed of cylinders, rollers, and what is called
a 'licker-in.'　The 'licker-in' is a cylinder of indented discs,
something like the saw cylinder upon a cotton gin.　Its posi-
tion is parallel with the other rollers and cylinders and close
to one of them; about 4 inches from the back end of the
machine.　Upon the machines as they had been operated
prior to December, 1913, an opening about 2 inches wide and
40 inches long, extending across the machine, was closed in
with a plate bolted to the machine.　The inner edge of the
base of this opening was 3 or 4 inches from the 'licker-in,'
the base being 2 or 3 inches wide.　The effect of closing this
opening was to prevent the accumulation of waste at that
point and to prevent the waste from flying into the operator's

FOOTNOTE.—As to the twilight region between, and the consistency or
compatibility of the defenses of assumption of risks and contributory
negligence, and their applicability to the same facts or same case, see
notes in 18 A. & E. Ann. Cas. 966; 49 L. R. A. 53 to 62; 21 L. R. A.
(N. S.) 138, and opinion in 205 U. S. 1; 51 L. Ed. 681; 27 Sup. Ct.
Rep. 407, and in *S. A. L. Ry.* v. *Horton,* 36 Sup. Ct. Rep. 180.

face, when he opened the door to the lower part of the machine for the purpose of removing accumulations of waste and trash upon the floor.

In December, 1913, defendant decided to test out a new attachment, an extension to the back part of the machine, and affixed it to nine of the machines in charge of the plaintiff. In order to affix the new attachment it became necessary to remove the plate which closed in the opening referred to. A somewhat similar plate, specially designed for use with the new attachment and intended to serve the same purpose, had not arrived from the manufacturers when the new attachment was affixed and the machine was put in operation without it.   This was known to the plaintiff, who had assisted in putting the new attachments on.   The effect of leaving the opening without the closing-in plate was to accumulate waste upon the base of the opening, practically filling the opening with waste.   When the lower door would be opened for the purpose of cleaning out the accumulations of waste on the floor underneath the machine, a draft would be created by the revolutions of the 'licker-in' and the waste which had accumulated in the opening would fly out into the face of the operator.   This condition did not exist upon the other machines not equipped with the new attachment.

Upon the occasion in question the plaintiff went to one of the machines for the purpose of cleaning it, as he was required to do every other day.   He was provided with a rake which he had helped to make for use in cleaning out the waste (as he testified 'under the machine,' but which his main witness testified could have been used to clean out the waste which has accumulated in the opening).   He kneeled down at the back end of the machine, reached his hand up under the attachment, and attempted to remove the waste that had accumulated in the opening with his bare hand. The complaint may give the impression that he grabbed up a handful of waste from outside of the machine and was attempting to wipe off the waste in the opening with it; but

by his statement it is very clear that he had nothing in his hand when he reached up to the opening; that as he passed his hand along the base of the opening he gathered a handful of the waste.   He states that as he was thus engaged, the teeth of the 'licker-in' caught the waste in his hand and jerked his hand in between it and a roller, causing an injury, which resulted in the amputation of two fingers.

These facts also were developed upon the examination of the plaintiff's witness, Middleton, and of the plaintiff himself : Middleton testified that the plaintiff was familiar with the machines, had helped him to set them up; that he had told plaintiff of the opening and of the danger and had warned him 'whatever he did not to put his hand up there;' 'I told him whatever he done not to put his hand up there to wipe the waste off;' the witness further stated that he was accustomed himself to wipe the waste off with his hand; that he knew it was dangerous, but that as an experienced hand, he knew how to do it without getting hurt; that one would have to thrust his hand 3 or 4 inches beyond the inner edge of the opening before it would come in contact with the 'licker-in.'

The plaintiff testified that the 'licker-in' was 3 or 4 inches back of the opening; that he knew its location; knew its use to chop up the cotton; knew it was dangerous and where the danger was; saw the attachments put on; had cleaned off the opening before; knew the opening was there; knew it was dangerous to put his hand there; there was nothing about the situation that he did not know.   In reference to the draft blowing the waste in his face, it will be noted that that would happen only when the door below was opened; upon this occasion he had not opened the door; he was simply providing against that contingency by removing the waste before he opened the door."

All of this statement of facts is not admitted, but the variance will be stated under appropriate heads.

The verdict was for the plaintiff, and the defendant appealed with several exceptions, but the points raised only will be stated in this opinion.

*Messrs. Cothran, Dean & Cothran,* for appellant, submit: *The master cannot be held liable if his negligence was merely a condition, as opposed to the efficient cause of the injury:* 2 Labatt (1st ed.), sec. 803; (2d ed.), sec. 1570. *The test of liability is whether or not the intervening direct cause of the injury was a result reasonably to be anticipated from the original act of negligence:* Watson on Pers. Inj., sec. 58; 1 Strob. 525; 31 S. C. 398; 94 U. S. 474; 76 S. C. 204; *James v. Mfg. Co.,* 80 S. C. 232. *The motion for nonsuit or the motion for a directed verdict should have been granted for the reason that the testimony shows that the injury sustained by the plaintiff was due to his own contributory negligence:* 1 Labatt, Master and Servant, secs. 364, and 274 and 365; 68 S. C. 55; 46 S. E. 525; 73 S. C. 481; 53 S. E. 639; 82 S. C. 548; 85 S. C. 471. *The motion for nonsuit or the motion for a directed verdict should have been granted for the reason that the testimony shows that the injury sustained by the plaintiff was due to the risks of his employment, and to the particular risk of the undertaking in which he was engaged which he had assumed:* 72 S. C. 346; 80 S. C. 238; 86 S. C. 235; 99 S. C. 364; 233 U. S. 492; 84 S. C. 287. *In the event that the first three grounds above stated should be overruled, the defendant is entitled to a new trial upon the ground of error of the presiding Judge in allowing the plaintiff's first request to charge:* 61 S. C. 468; 80 S. C. 232; 141 Fed. 913; 126 Fed. 495; 115 Ill. App. 296; 96 N. W. 929; 134 Mich. 575; 120 N. W. 360; 118 N. W. 518; 116 N. W. 564; 48 L. R. A. 76.

*Messrs. James H. Price* and *Proctor A. Bonham,* for respondent, cite: *The evidence on all issues raised being sus-*

*ceptible of more than one inference, they were properly sub-mitted to the jury:* 91 S. C. 197; *Ib.* 440; 98 S. C. 129; 95 S. C. 302; 92 S. C. 36; 89 S. C. 378; 88 S. C. 86; 74 S. C. 16; 80 S. C. 294; 97 S. C. 412. *The charge proper:* 78 S. C. 129; 98 S. C. 33; 89 S. C. 378, 386; 87 S. C. 212; 75 S. C. 390; 79 S. C. 513; 74 S. C. 19.

September 28, 1915.

The opinion of the Court (reciting the foregoing statement of facts) was delivered by MR. JUSTICE FRASER.

The question of defendant's negligence was withdrawn at the hearing in this Court.

1. The next question is, was there indisputable evidence of contributory negligence, so that there should have been a nonsuit or an instructed verdict?

There was not. It is true that when there is a safe way and an unsafe way, the doing of the thing in the unsafe way is negligence. The record fails to show that there was a safe way provided. There was evidence that it would have been difficult to use the rake for the purpose of removing this lint, and also that if the rake was caught in the "licker-in" the rake itself would have been a source of danger to the plaintiff.

The contributory negligence that arises from a violation of instructions was not admitted. It is true the plaintiff only said that he did not recollect the instructions, but there was evidence to contradict the witness who testified to instructions not to use his hand. The witness said: "I told the plaintiff not to use his hand." The contradiction was, "all that I told him was to be careful." This was a direct contradiction and not merely an incomplete statement.

Judge Shipp well said, the question in such a case was, did Mr. Middleton warn the plaintiff not to use his hand?

That was a question for the jury.

2. Was there such incontrovertible evidence of an assumption of risk as to warrant a nonsuit or a direction of a verdict?

There being no question of the master's negligence, then the master assumed the burden of proving its affirmative defense of assumption of risk. The master is not liable for obvious risks caused by his negligence, or those of which the servant knew. The servant assumed the risk of those. The question was, what was the risk in wiping off the machine? Was it the thrusting of the hand too far into the machine, or was it that the hand would be jerked into the machine? The plaintiff admitted that he knew that if he thrust his hand too far into the machine he would be hurt. He did not admit that he knew that his hand was liable to be jerked into the machine, and there was no proof that he knew or ought to have known or assumed this risk.

The plaintiff testified that his hand was jerked in; was it? That was a question for the jury. If the plaintiff knew that his hand was in danger of being jerked in and injured, and notwithstanding that knowledge, used his hand, he assumed the risk.

If the jury believed that the danger that was obvious or known was that the plaintiff would thrust in his hand too far, and he was not injured by his voluntary act, then he avoided the obvious risk. Of course, if the plaintiff was warned that there was danger, the specific danger not being stated, and forbidden to use his hand in any event, then he assumed any and all dangers that were revealed. That warning and that prohibition was, as we have seen, a question for the jury and prevented a nonsuit or a direction of a verdict.

3. The next question is as to his Honor's charge:

"7. Error of the presiding Judge in charging the plaintiff's first request to charge, which was as follows:

'From the mere knowledge of a defect in a machine the inference should not be drawn as a matter of law that the plaintiff assumed the risks of working on a machine or was guilty of contributory negligence in so doing unless it is made to appear that the danger was so obvious that no person of ordinary prudence would have attempted to perform such service;' and in adding thereto the following: 'If a person knows that machine is dangerous, knows it is so dangerous that a person of ordinary prudence, knowing its condition, would not have worked on it, he could not recover; if he continued after full knowledge of that fact to work on the machine in that condition, why, then, he could not recover in this case.' "

"Specifications: This is an erroneous conception and declaration of the law of assumption of risk.    Its application does not depend upon the question of the negligence of the servant, as the charge requires.    It involves an implied agreement by the servant to assume the risks ordinarily incident to his employment, or a waiver after a full knowledge of an extraordinary risk of his right to hold the master for a breach of duty in this regard.    Under the law governing this subject, a servant may exercise the utmost care in the situation and yet be held to have assumed the risk incident to his employment or an extraordinary risk after full knowledge.    The charge was inconsistent with those principles which have been declared by this Court."

If that statement was inaccurate, it was cured by appellant's first request to charge, which was as follows:

"1. 'If the jury believe from the evidence that the plaintiff knew that the plate was off the machine upon which he was at work; that the effect of this omission was to accumulate lint in the opening; that to remove this lint with the hand while the machine was in operation was dangerous; that the teeth of the licker-in were liable to catch his hand; and knew of the location of the licker-in in dangerous proximity; I charge you that the plaintiff assumed the risk of

injury and is not entitled to damages.' If you find those facts to exist from the testimony, the burden of the proof being on the defendant to show by the greater weight of the testimony that that was one of the risks that he took, then I charge you that to be the law; but the defendant does not have to put up witnesses in his own behalf, because he has the right to rely on the testimony furnished by the plaintiff. If he can make out his defense by the plaintiff's own witnesses he has the right to do that."

This request was charged and did not restrict the defense to the risk that was obvious, or to the general unsafe condition of the machine, or the effect of a warning or no warning.

The Horton case, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062; 56 L. R. A. (N. S.) 1915c, 1; 36 A. & E. Ann. Cas. 1915b, 475; cited in the case of *Padgett* v. *R. Co.,* 99 S. C. 364, 83 S. E. 633, relied upon by appellant, contains the following:

"If, however, there be a promise of reparation, then, during such time as may be reasonably required for its performance or until the particular time specified for its performance, the employee relying upon the promise does not assume the risk unless at least the danger be so imminent that no ordinarily prudent man under the circumstances would rely upon such promise."

Here there was no evidence of a promise, but there is evidence that the defendant had been warned of the danger of leaving these places open and that new plates to cover them had been ordered and were on the way.

Appellant claims that his Honor confused contributory negligence with assumption of risk; that they are entirely separate and distinct, and that a man may have assumed the risk, even though he acted with the utmost care.

They may be and then they may not be.

Neither the Horton case nor the Padgett case entirely separate them.

In working with defective machinery the assumption of risk is based upon contributory negligence in working with defective machinery at all.

The judgment is affirmed.

A petition for rehearing in above case having been filed, the Court, after considering same, made the following order:

November 26, 1915.

The Court understood the appellant to admit negligence on the part of appellant and the writer of this opinion so noted it on his brief.

When the learned counsel, who prepared this petition, says that he did not admit it, then this Court must be mistaken, because counsel is not only accurate, but absolutely trustworthy.

It can make no practical difference, however, because the jury found the negligence and there was ample testimony to sustain it.

This opinion does not ignore the difference between assumption of risk and contributory negligence. Even though, as the authorities say, they are as different as day and night, yet it is also true, as the authorities say, there is a twilight where the day shades off into the night.

The petition is dismissed.