608 S.E.2d 859

**Gloria COLE and George DeWalt, Jr., in their capacities as Personal Representatives of the Estate of George Ernest Cole, deceased, Petitioners/Respondents,**

v.

**SOUTH CAROLINA ELECTRIC & GAS, INC., Respondent/Petitioner.**

No. 25932.

Supreme Court of South Carolina.

Heard Dec. 1, 2004.

Decided Jan. 31, 2005.

Rehearing Denied March 2, 2005.

446

F. Xavier Starkes and William T. Toal, of Johnson, Toal & Battiste, P.A., of Columbia, for petitioners/respondents.

Robert A. McKenzie and Gary H. Johnson, II, of McDonald, McKenzie, Rubin, Miller & Lybrand, L.L.P., of Columbia, for respondent/petitioner.

Acting Chief Justice MOORE:

We granted a writ of certiorari to review the Court of Appeals' decision involving application of the Recreational Use Statute, S.C.Code Ann. § 27–3–10 et seq. (1991), and assumption of the risk.[1] We affirm as modified.

## FACTS

Petitioners/respondents (hereinafter collectively referred to as "Cole") brought this wrongful death action for the death of their son George Cole. George drowned on August 6, 1997, at the age of fourteen while swimming at a Lake Murray recreation site owned by respondent/petitioner South Carolina Electric & Gas (SCE&G). Cole alleged SCE&G was negligent and grossly negligent for failing to provide lifeguards, lifesaving equipment, and the proper warnings at the site. On SCE&G's motion for summary judgment, the trial court found SCE&G was entitled to immunity from liability for simple negligence under the Recreational Use Statute and the trial proceeded only on the issue of SCE&G's gross negligence.

At trial, Cole produced evidence that George was at Lake Murray Site # 1 with his friend Vincent, Vincent's mother,

---

**1.** *Cole v. South Carolina Elec. & Gas, Inc.,* 355 S.C. 183, 584 S.E.2d 405 (Ct.App.2003).

and her boyfriend. By all accounts, George was a good swimmer. The boys were told not to go into the water without telling the adults but they did not follow this directive. Vincent testified that he and George swam out to the safety line, or buoy line. They did not know the water at the buoy line was over their heads. The two boys were racing back to shore when Vincent turned around and saw George floundering. Vincent ran for a security guard who called 911.

Another witness saw George crying for help and bobbing up and down. Several bystanders attempted a rescue but could not find George under the water. After about fifteen to twenty minutes, his body was found in seven or eight feet of water at the bottom of the lake. He could not be revived.

At trial, Cole's aquatic safety expert, Stanly Shulman, testified that George would have lived had there been a lifeguard on duty because lifeguards are trained to search under water. Further, bystanders could have saved him had there been safety equipment available. Shulman also testified that the buoy line should have been placed at a depth of three-and-a-half to five feet, rather than seven to eight feet, and that depth markers should have been placed. The signs warning simply "no lifeguard on duty" were inadequate in his opinion to warn of the dangers inherent in swimming in a lake. Shulman also testified that SCE&G failed to develop an effective risk management plan even after two previous drownings at the site.

The jury returned a verdict for SCE&G and Cole appealed. On appeal, the Court of Appeals affirmed summary judgment on the issue of immunity under the Recreational Use Statute but reversed and remanded for a new trial on the gross negligence cause of action because the trial judge failed to charge SCE&G's burden to prove its affirmative defense of assumption of the risk. Both parties petitioned this Court for a writ of certiorari.

## DISCUSSION

### Cole's Appeal

*Application of the Recreational Use Statute*

■ In 1968, our legislature enacted a Recreational Use Statute (RUS), codified at §§ 27–3–10 through –70, which

limits the liability of a landowner under certain conditions. In pertinent part, these sections provide as follows.

### § 27–3–10. Declaration of purpose.

The purpose of this chapter is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

### § 27–3–20. Definitions.

(c) "Recreational purpose" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, summer and winter sports and viewing or enjoying historical, archaeological, scenic, or scientific sites.

*(d) "Charge" means the admission price or fee asked in return for invitation or permission to enter or go upon the land.*

### § 27–3–40. Effect of permission to use property for recreational purposes.

Except as specifically recognized by or provided in § 27–3–60, an owner of land who permits without charge any person having sought such permission to use such property for recreational purposes does not thereby:

(a) Extend any assurance that the premises are safe for any purpose.

(b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

(c) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons.

### § 27–3–60. Certain liability not limited.

Nothing in this chapter limits in any way any liability which otherwise exists:

(a) For grossly negligent, willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

(b) *For injury suffered in any case where the owner of land charges persons who enter or go on the land for the recreational use thereof* ....

(emphasis added).

It is undisputed that on the day George drowned, the driver of the car in which George was a passenger paid a three-dollar parking fee at SCE&G's recreational site on Lake Murray. The fee is a per-vehicle charge and is not related to the number of visitors in the vehicle. People who enter on foot or by bicycle are charged no fee. The trial court ruled that the parking fee was not a "charge" within the meaning of the RUS and therefore SCE&G was entitled to the protection of the RUS.

Cole contends the parking fee is a "charge" that fits within the exception to landowner immunity stated in § 27–3–60(b). However, subsection (d) specifically defines "charge" as "the *admission price or fee* asked in return for invitation or permission to enter or go upon the land." (emphasis added.) This definition limits a "charge" to a general charge for admission to the property. Courts interpreting this phrase have consistently held that a parking fee does not qualify as a "charge" because not everyone must pay it for admission to the property. *See Stone Mountain Mem. Assoc. v. Herrington*, 225 Ga. 746, 171 S.E.2d 521 (1969); *City of Louisville v. Silcox*, 977 S.W.2d 254 (Ky.App.1998); *Hanley v. State*, 837 A.2d 707 (R.I.2003); *see generally Moss v. Dep't of Nat. Resources*, 62 Ohio St.2d 138, 404 N.E.2d 742 (1980) (admission fee is a charge necessary to utilize the overall benefits of a recreational area). We concur in this view and conclude a parking fee does not fit within the statutory definition of "charge." The trial court therefore properly held SCE&G is entitled to immunity for simple negligence under the RUS.

### SCE&G's Appeal

#### 1. *Burden of proof on assumption of risk* [2]

The trial judge declined to charge that SCE&G had the burden of proving its affirmative defense of assumption of the

---

**2.** Assumption of the risk is abolished for causes of action accruing after November 9, 1998. *Davenport v. Cotton Hope Plantation Horizontal*

risk and instead charged generally that SCE&G had the burden of proving the plaintiff's "fault" for purposes of comparative negligence and that the jury should "consider the defenses" set forth by SCE&G. The only charge specifically regarding assumption of the risk was to define it as a defense and then instruct: "If you find that . . . the plaintiff assumed the risk associated with this activity, then you would find for the defendant." The Court of Appeals found this charge was inadequate to properly instruct the jury regarding SCE&G's burden of proof and reversed on this issue. SCE & G contends this was error on the following grounds.

### a. The charge as a whole was sufficient.

■ It is well-settled that assumption of the risk is an affirmative defense which the defendant bears the burden of proving. *Baldwin v. Piedmont Mfg. Co.*, 102 S.C. 402, 86 S.E. 379 (1915); *see also Englert, Inc. v. Netherlands Ins. Co.*, 315 S.C. 300, 433 S.E.2d 871 (1993) (defendant has burden of proving affirmative defenses listed in Rule 8(c), SCRCP); Rule 8(c), SCRCP (assumption of risk is affirmative defense).

■ The question here is whether the charge as a whole conveyed this burden to the jury. We agree with the Court of Appeals that it did not, especially in light of the instructions defining the plaintiff's burden of proof:

As the trial begins, the scales are even, but throughout the course of the trial as the testimony and the evidence comes in, the scales may tip back and forth. If after all of the evidence has been presented, the scales remain even or they tip ever so slightly in favor of the defendant, then the plaintiffs would not have satisfied their burden of proof in this particular matter.

By contrast, the charge regarding SCE&G's affirmative defense indicated only that the jury should "consider" SCE&G's defenses and if the jury found the plaintiff assumed the risk, it should find for SCE&G. This charge gave the jury no standard by which to determine if SCE&G had established its defense. The Court of Appeals properly found the charge inadequate.

*Prop. Regime*, 333 S.C. 71, 508 S.E.2d 565 (1998). This cause of action arose before that date.

*b. Primary implied assumption of the risk.*

SCE & G contends there was no need to charge assumption of the risk under the doctrine of "primary implied assumption of the risk." We disagree.

Primary implied assumption of the risk arises when the plaintiff impliedly assumes risks inherent in a particular activity. *Davenport*, 333 S.C. at 81, 508 S.E.2d at 570. It is not a true affirmative defense but is another way of stating there is no duty to the plaintiff. *Id.* We disagree SCE&G owed no duty here. A landowner has a duty to warn a licensee of concealed dangerous conditions or activities known to the landowner. *Vogt v. Murraywood Swim & Racquet Club*, 357 S.C. 506, 593 S.E.2d 617 (Ct.App.2004). Despite immunity under the RUS, SCE&G may still be liable for gross negligence which is the failure to exercise even slight care. *Clyburn v. Sumter County Sch. Dist. No. 17*, 317 S.C. 50, 451 S.E.2d 885 (1994). Whether SCE & G met this standard of care in warning only that there was no lifeguard is a question of fact for the jury.

*c. Harmless error*

SCE&G contends any error in the failure to charge the burden of proof is harmless because the jury must have concluded Cole failed to prove gross negligence. SCE&G bases this assertion on the fact that the only question put to the trial court by the jurors was regarding the distinction between negligence and gross negligence. This question, however, does not indicate the jury failed to consider assumption of the risk, especially since SCE&G's case basically turned on proving that George assumed the risk of swimming in Lake Murray.

*d. Assumption of risk as a matter of law*

SCE&G contends George assumed the risk inherent in swimming in a natural body of water and since his fault was greater than 50%, the case should not be remanded for a new trial.

There are four requirements to establishing the defense of assumption of risk: (1) the plaintiff must have knowledge of the facts constituting a dangerous condition; (2) the

plaintiff must know the condition is dangerous; (3) the plaintiff must appreciate the nature and extent of the danger; and (4) the plaintiff must voluntarily expose himself to the danger. *Davenport,* 333 S.C. at 79, 508 S.E.2d at 569. According to Cole's expert witness, the warning simply stating there was no lifeguard was insufficient notice of the danger involved. There remains a factual issue whether George was sufficiently warned of the danger to have legally assumed the risk of swimming in Lake Murray. SCE&G has not established assumption of the risk as a matter of law.

### 2. Effect of Regulation 61–50

■ At trial, Cole introduced evidence that at the time of George's drowning, DHEC Regulation 61–50 required the use of lifeguards and lifesaving equipment.[3] SCE&G responded with evidence of a 1978 administrative ruling exempting it from this requirement. In 1980, the regulation was amended. The issue at trial was whether SCE&G's exemption remained valid under the amended regulation.

Rather than decide this issue, the trial judge ruled it would be submitted to the jury as a factual issue. In charging the jury, however, the trial judge charged only that evidence of a violation of a regulation is evidence of negligence. Cole appealed, contending the trial judge should have decided whether the regulation applies as a matter of law. SCE&G argued in response that the regulation conflicts with the RUS and therefore as a matter of law it does not apply regardless of whether the 1978 exemption remained valid. Rather than resolve this issue, the Court of Appeals concluded any error was harmless because the trial judge's charge instructed the jury to determine whether the regulation was violated, an instruction that was favorable to Cole who therefore could not show prejudice on appeal.

SCE&G contends the Court of Appeals should have addressed whether the regulation applies as a matter of law to resolve whether on remand a violation should be charged as evidence of negligence. We agree and find as a matter of law the regulation does not apply.

---

**3.** This regulation was subsequently amended in 1999 as discussed at footnote 4, *infra.*

 The purpose of the RUS as stated in the statute is "to encourage owners of land to make land and water areas available to the public for recreational purposes." § 27–3–10. Under the RUS a landowner's liability is limited to gross negligence, which is defined as the failure to exercise slight care. *Clyburn, supra.* By contrast, Regulation 61–50, as it read at the time this cause of action arose,[4] imposed "owner responsibility" for lifeguards and lifesaving equipment and subjected the violator to fines and imprisonment. This regulation, as applied, conflicts with the RUS since a qualifying landowner under the RUS has a duty to exercise only slight care. A duty to provide recreational safety features such as lifeguards and lifesaving equipment exceeds this "slight care" standard. Since a regulation cannot alter or add to a statute, Regulation 61–50 does not apply. *See McNickel's, Inc. v. S.C. Dep't of Rev.,* 331 S.C. 629, 503 S.E.2d 723 (1998).

In sum, on remand a violation of Regulation 61–50's safety provisions should not be charged as evidence of negligence since SCE & G has no duty under the RUS to exercise more than slight care.

**AFFIRMED AS MODIFIED.**

WALLER, BURNETT, PLEICONES, JJ., and Acting Justice JAMES W. JOHNSON, JR., concur.

---

4. Regulation 61–50 was amended in 1999 and now applies only to a natural swimming area if there is "a fee or membership required to gain access to a natural freshwater location." Further, the regulation no longer requires safety measures such as lifeguards and life-saving equipment but applies solely to monitoring water quality.