# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Robert Bauckman, Respondent,

v.

Jennifer McLeod, Appellant.

Appellate Case No. 2017-000885

---

Appeal From Sumter County
George M. McFaddin, Jr., Family Court Judge

---

Opinion No. 5701
Heard September 10, 2019 – Filed December 31, 2019

---

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

John Eagle Miles, Sr., and Everett Joseph Mercer, both of
Sumter, for Appellant.

Richard Thomas Jones, of Jones Seth & Jones, LLP, of
Sumter, for Respondent.

---

**GEATHERS, J.:** In this action to determine child support arrearages, Jennifer McLeod ("Mother") challenges the family court's final order, arguing the family court erred in 1) reducing the amount of child support arrearages owed by Robert Bauckman ("Father"); 2) failing to award judgment interest on the arrearage amount; 3) failing to modify Father's current support obligation; and 4) awarding attorney's fees and costs to Father. We affirm in part, reverse in part, and remand.

# FACTS

Mother and Father were married on September 16, 1997. The parties have one son ("Child") who was born in 1999. The parties divorced on November 25, 2002, and the family court's final order required Father to pay $399 a month in child support. The order provided that payments were to be made directly to Mother but included a provision for payment through the court should Father ever be more than fourteen days late.

Around April 2008, Father began paying $240 a month in child support and made no payments during the summer months in which Child was visiting with Father.[1] In November 2015, Father resumed paying $399 a month in child support. On November 30, 2015, Father filed a summons and complaint, notice of motion, and motion for temporary relief in which Father asked the court to "increase" his child support payments to $399[2] a month and declare him current on his child support obligation. On January 4, 2016, Mother filed her answer and a counterclaim seeking an accounting of the arrearage on unpaid child support, including interest, and a modification of child support based on Father's increase in income. Father filed a reply on January 28, 2016, alleging the reduction of child support was not a unilateral decision and arguing that equitable estoppel precluded Mother from collecting the arrearages and interest on the unpaid child support.

A final hearing was held on May 25, 2016. At the hearing, Father stipulated that his arrearages totaled $17,430. Father testified that he remarried and now had two children with his new wife. Concerning the reduced child support payments, Father claimed that he called Mother in March 2008 to notify her that he was having a difficult time making the $399 payment and paying for Child's insurance. According to Father, Mother agreed that the court ordered child support was "a lot of money" and suggested he start paying $240 a month, indicating that amount "would be sufficient." Additionally, Father testified that Mother told him not to pay child support during the summer while Child was visiting with Father because he was taking care of Child and "footing the bill" for Child's airfare.[3] Father further indicated that Mother never complained about the reduced payments, filed an action

---

[1] Father is a resident of Oldham County, Kentucky.

[2] Father's request to have his child support obligation increased to $399 a month suggests that he acted under the assumption that his reduced payments modified the child support obligation of $399 a month established in the original divorce decree.

[3] We note there is nothing in the original divorce decree granting Father relief from child support while Child was living with him during the summer months.

for contempt, or filed an affidavit with the court to have child support paid through the clerk's office. To the contrary, Father testified that Mother had indicated Child "was well taken care of and she had no money issues."

Father further testified that he relied on Mother's assurances that he only had to pay $240 a month in child support. Additionally, Father testified that the entire arrearage issue had arisen over a pair of "Beats" headphones. Father indicated that his new wife had purchased Child a pair of "Beats" headphones for behaving and working on his summer-school assignments. However, Father's wife took the headphones away from Child as punishment for cutting up Father's youngest son's t-shirt. Mother called Father in November 2015 to discuss the headphones incident, but Father's wife answered the phone and the two got into a disagreement. According to Father, Mother sought to enforce the entire child support obligation after this incident, asserting that Father owed her $14,310 in arrearages. Finally, Father testified he never sought a child support modification from the family court but thought that he was doing the right thing.

Child's maternal grandmother, Patsy Royal ("Grandmother"), testified that Mother and Child lived with her for a period of time following Mother and Father's divorce. After Grandmother's mother died, she used some of her inheritance to buy a house for Mother and Child. Grandmother further testified the original $399 child support payments were not always enough to cover Child's expenses and Child's doctor did not accept Father's insurance. As a result, Grandmother testified she often helped pay for Child's doctor visits and would write checks for his school lunch account. Grandmother indicated Mother was struggling financially for a while and Grandmother helped co-parent Child because Mother needed the support.

Mother testified she remarried and has a two-year-old daughter with her new husband. Concerning the reduced child support payments, Mother indicated Father called to inform her that he had been receiving unemployment and would not be able to pay the full amount. Mother explained that she thought the reduced payment was a one-time thing and that Father would pay her back the next month. Mother further indicated $240 was not enough to provide for all of Child's needs and she did not have the excess income needed to cover the $159 difference. Mother testified that when she would ask Father to resume paying the full child support obligation, Father would respond that Child would suffer because of it. According to Mother, Father would often ask, "What are you going to do? Put [Child]'s dad in jail?," before asking her how this would make Child feel. Additionally, Mother indicated that if she asked Father to pay the full amount, he would respond by claiming that he would not be able to afford the airfare for Child's visits or Child's Christmas presents. As

a result, Mother claimed she did not push the money issue or seek contempt charges because she was afraid Father would retaliate against Child.[4]

On February 13, 2017, the family court issued its final order. In its order, the court found the "circumstances clearly indicate that the parties did in fact have an agreement." Specifically, the court was convinced by the fact that Father paid $240 a month for seven and a half years without Mother filing a contempt action, filing an affidavit with the court, or otherwise raising any objections.[5] Additionally, the court found Father was more credible than Mother[6] and that Grandmother had testified all of Child's financial needs were met. The court further found,

> The conduct of the Mother was calculated to convey the impression that the [$240] payment and non-payment during the summer months from April[] 2008 through October[] 2015 was the agreement of the parties and conveyed to the Father the impression that the parties should follow that agreement. The Mother is now attempting to assert a completely different position. There was an intention, or at least an expectation, by the Mother that her conduct would be acted on by the Father.

The court determined that

> The Father relied upon the agreement of the parties from 2008 to 2015, and obviously, assumed [$240] to be the correct and/or acceptable child support payments, as there was no action to object to these payments for seven and one-half (7½) years. The Father conducted his personal and financial life in such a way that he was relying upon the payments being [$240.00] per month and

---

[4] Mother testified that Father planned to take Child out to eat while he was in town for the temporary hearing on January 4, 2016. However, Mother explained that after she filed her answer and counterclaim, Father refused to spend time with Child. According to Mother, Child called Father for an explanation and Father told Child that he was not "his top priority" and that "[h]e had a family to get back to."

[5] The court noted that Mother did not present any evidence of letters, text messages, emails, or other documentation of any objection to the reduced payments.

[6] The court determined Mother lacked credibility due to her fraudulent check convictions. The court also determined Grandmother was not credible because she testified that she was not aware of Mother's convictions.

non-payments during the summer. The Mother has now placed in her pleadings a request for the entire alleged arrearage being owed and also states in her pleadings that she is entitled to interest. If the Father had known the Mother would be seeking a different amount of child support seven and one-half (7½) years later, and especially seeking interest, he would have taken a different approach. The Father has therefore relied upon the agreement of the parties and upon the conduct of the Mother[,] and the Father has had a prejudicial change of position in reliance upon the conduct of the Mother and agreement of the parties.

Accordingly, the court found Father had proven the defense of equitable estoppel.

Pursuant to its estoppel finding, the court determined it would have been justified in finding Father paid in full, but ruled that Father owed $14,310.00 in arrearages. However, the court determined Father would not have to pay interest because Mother did not request it in her pleadings, had not presented evidence concerning interest, presented no evidence of Father's bad faith, and equitable estoppel barred Mother from receiving interest. The court further denied Mother's request to modify child support, finding Mother had not presented any testimony or evidence on the issue. Finally, the court ordered Mother to pay Father's attorney's fees. Mother filed a motion to reconsider on March 3, 2017, and the court denied the motion on March 16, 2017.[7] This appeal followed.

## ISSUES ON APPEAL

1. Did the family court err in reducing the amount of child support arrearages owed by Father?

2. Did the family court err in failing to award judgment interest on the arrearage amount?

3. Did the family court err in failing to modify Father's current support obligation?

4. Did the family court err in awarding attorney's fees and costs to Father?

---

[7] Mother's motion to reconsider and the court's corresponding order do not appear in the record. However, both parties reference the motion and order in their briefs.

## STANDARD OF REVIEW

"The family court is a court of equity." *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). "Our standard of review, therefore, is *de novo*." *Id*.; *see also Stoney v. Stoney*, 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018) ("[W]e reiterate that the proper standard of review in family court matters is de novo, rather than an abuse of discretion . . . ."). Accordingly, "[o]n appeal from the family court, the appellate court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence." *S.C. Dep't of Soc. Servs. v. Polite*, 391 S.C. 275, 279, 705 S.E.2d 78, 80 (Ct. App. 2011). However, "*de novo* review neither relieves an appellant of demonstrating error nor requires [an appellate court] to ignore the findings of the family court." *Lewis*, 392 S.C. at 389, 709 S.E.2d at 654. Rather, an appellate court "will affirm the decision of the family court in an equity case unless its decision is controlled by some error of law or the appellant satisfies the burden of showing the preponderance of the evidence actually supports contrary factual findings by th[e appellate] court." *Holmes v. Holmes*, 399 S.C. 499, 504, 732 S.E.2d 213, 216 (Ct. App. 2012).

## LAW/ANALYSIS

### I. Equitable estoppel and retroactive modification of child support

Mother argues the family court erred in finding Father proved equitable estoppel because Father did not demonstrate any detrimental reliance or prejudicial change in position due to the purported agreement. Therefore, Mother argues the family court's order constituted a retroactive reduction in child support. Father argues the family court properly found that equitable estoppel applied because he conducted his personal finances in reliance on the purported agreement. Alternatively, Father argues that the family court did not err in reducing the child support arrearages because 1) South Carolina law does not preclude parents from making a private agreement to alter court-ordered support obligations; and 2) the family court has the power to alter the amount of child support originally granted if circumstances show an alteration to be equitable, and this power extends to installments that have already accrued. We agree with Mother.

Pursuant to section 63-17-310 of the South Carolina Code (2010),

> The family court has the authority to enforce the provisions of any decree, judgment, or order regarding child support of a court of this State . . . . This authority includes the right to modify any such decree, judgment, or

> order for child support as the court considers necessary upon a showing of changed circumstances. *No such modification is effective as to any installment accruing prior to filing and service of the action for modification*.

(emphasis added).[8] In interpreting this statute, our courts have acknowledged South Carolina's duty, as *parens patriae*, to protect and safeguard the welfare of its children. *Harris v. Harris*, 307 S.C. 351, 353, 415 S.E.2d 391, 393 (1992). Accordingly, the "[f]amily [c]ourt is vested with exclusive jurisdiction to ensure that, in all matters concerning a child, the best interest of the child is the paramount consideration." *Id*. Viewing the statute through this lens, our courts have indicated "[the precursor to section 63-17-310] was enacted to effect compliance with federal child support enforcement procedures *prohibiting retroactive modification of child support arrears*, the rationale being that such payments, once accrued, are vested." *Id*. at 354, 415 S.E.2d at 393 (first emphasis added). Consequently, our courts have interpreted "[the precursor to section 63-17-310] as expressing the legislative intent that *the retroactive bar apply only to arrears that have accrued at the time a petition for modification is filed*." *Id*. (emphasis added).

"The family court has exclusive jurisdiction . . . to order support of a [] child . . . ." S.C. Code Ann. § 63-3-530(A)(14) (2010). As such, "[t]he general rule is that it is the obligation of the divorced spouse to pay the specified amounts according to the terms of the decree and *said spouse should not be permitted to vary these terms as a matter of convenience*." *Blackwell v. Fulgum*, 375 S.C. 337, 345, 652 S.E.2d 427, 431 (Ct. App. 2007) (emphasis added). Similarly, "[n]o agreement can prejudice the rights of children. More specifically, the basic right of minor children to support is not affected by an agreement between the parents or third parties as to such support." *Lunsford v. Lunsford*, 277 S.C. 104, 105, 282 S.E.2d 861, 862 (1981) (citation omitted); *see also* 67A C.J.S. *Parent and Child* § 184, Westlaw (database updated December 2019) ("An agreement between the parents may not affect the basic support rights of minor children."). With this in mind, when "a divorce decree has set the amount [that] a parent is to pay in child support[,] the parties to the decree cannot themselves reduce the amount. *Court approval is required*." *Peebles v. Disher*, 279 S.C. 611, 616, 310 S.E.2d 823, 825 (Ct. App. 1983) (emphasis added).

---

[8] Section 63-17-310 was previously codified in identical language as section 20-7-933. Act No. 198 §1, 1987 S.C. Acts 2209.

Despite our State's statutory bar against retroactive child support reductions and its strong precedent concerning the rights of a minor child to support, our supreme court has considered the doctrine of equitable estoppel as a defense to the enforcement of child support arrearages by a custodial parent. *See S.C. Dep't of Soc. Servs. on Behalf of State of Tex. v. Holden*, 319 S.C. 72, 77, 459 S.E.2d 846, 849 (1995) (finding the mother was not equitably estopped from seeking child support and arrearages when there was evidence that she consistently asked the father to pay support and the father presented no evidence that he changed his position in reliance on the alleged agreement); *see also Ables v. Gladden*, 378 S.C. 558, 567, 664 S.E.2d 442, 447 (2008) (finding the mother was not equitably estopped from seeking retroactive child support because she "never made any assurances or representations" to the father). However, we believe that even if the doctrine of equitable estoppel were considered, the courts' overarching responsibility to safeguard the welfare of children cannot be supplanted by an agreement between parents or third parties. That is, our jurisprudence concretely supports the courts' jurisdiction to preclude any reduction in child support that would be inimical or prejudicial to the rights of children.[9]

---

[9] *See Harris*, 307 S.C. at 353, 415 S.E.2d at 393 ("[The f]amily [c]ourt is vested with exclusive jurisdiction to ensure that, *in all matters concerning a child, the best interest of the child is the paramount consideration*." (emphasis added)); *Garris v. Cook*, 278 S.C. 622, 623, 300 S.E.2d 483, 484 (1983) (noting that a parent's wrongful act should not prejudice the minor child's right to support); *Lunsford*, 277 S.C. at 105, 282 S.E.2d at 862 ("No agreement can prejudice the rights of children. More specifically, the basic right of minor children to support is not affected by an agreement between the parents or third parties as to such support."); *S.C. Dep't of Soc. Servs. v. Polite*, 391 S.C. 275, 283, 705 S.E.2d 78, 82 (Ct. App. 2011) ("Here, the family court's ruling was not similarly driven by a child's best interests; rather, the family court feared a strict application of the relevant statutes would work an injustice on Polite. However, *Blackwell* instructs that an existing support agreement continues for the benefit of []minor children until the court calculates a proper reduction."); *Blackwell*, 375 S.C. at 345, 652 S.E.2d at 431 ("The general rule is that it is the obligation of the divorced spouse to pay the specified amounts according to the terms of the decree and said spouse should not be permitted to vary these terms as a matter of convenience."); *Peebles*, 279 S.C. at 616, 310 S.E.2d at 825 ("[W]he[n] a divorce decree has set the amount [that] a parent is to pay in child support[,] the parties to the decree cannot themselves reduce the amount. Court approval is required.").

"The essential elements of equitable estoppel are divided between the estopped party and the party claiming estoppel." *Strickland v. Strickland*, 375 S.C. 76, 84, 650 S.E.2d 465, 470 (2007).

> The elements of equitable estoppel as related to the party being estopped are:
>
> (1) conduct [that] amounts to a false representation, or conduct [that] is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those [that] the party subsequently attempts to assert;
>
> (2) the intention that such conduct shall be acted upon by the other party; and
>
> (3) actual or constructive knowledge of the real facts.

*Id*. Similarly, the party pleading estoppel must demonstrate: "(1) lack of knowledge, and the means of knowledge, of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change of position in reliance on the conduct of the party being estopped." *Id*. at 84–85, 650 S.E.2d at 470.

Assuming the family court properly considered equitable estoppel as a defense to child support arrearages, we conclude that the court erred in finding Father presented sufficient evidence to establish the defense. *See Cole v. S.C. Elec. & Gas, Inc.*, 355 S.C. 183, 195, 584 S.E.2d 405, 412 (Ct. App. 2003), *modified on other grounds by Cole v. S.C. Elec. & Gas, Inc.*, 362 S.C. 445, 454–55, 608 S.E.2d 859, 864 (2005) ("It is well established that a party pleading an affirmative defense has the burden of proving it."); *see also Collins Entm't, Inc. v. White*, 363 S.C. 546, 562, 611 S.E.2d 262, 270 (Ct. App. 2005) ("[E]stoppel must be affirmatively pled as a defense . . . ."). First, Father did not present sufficient evidence establishing an agreement between Father and Mother for decreased child support payments. Father submitted no letters, text messages, emails, or other documentary evidence demonstrating such an agreement. Rather, the family court found that an agreement existed based on Father's testimony, Mother's lack of credibility, and the lack of documentary evidence indicating Mother objected to the reduced payments. *But see Strickland*, 375 S.C. at 85, 650 S.E.2d at 470 ("[C]ontesting the enforcement of a court order based on the affirmative conduct of the parties is less offensive to judicial authority than the emphasis on the *lack of* conduct by a party . . . ."). Without any documentary evidence concerning an agreement or objections to the reduced child support payments, the existence or non-existence of an agreement ultimately boiled

down to a swearing match. Moreover, we disagree with the family court's finding that Mother's apparent acquiescence over time constituted evidence of an agreement necessary for a finding of estoppel. *Cf. id*. at 83–84, 650 S.E.2d at 469–70 ("[T]he concept of 'inexcusable delay' . . . is inconsistent with the judicial authority inherent in a court order. Because court orders awarding support and maintenance do not have an expiration date, allowing a party to avoid compliance based solely on the oblique notion of delay only serves to undermine the authority of the court."). Given that Father had the burden of proving an agreement by a preponderance of the evidence, we do not find Father's assertion that Mother agreed to reduced child support payments, without more, is enough to establish the existence of such an agreement.

Second, Father did not present any evidence of a prejudicial change in position or detrimental reliance on the purported agreement. *See id*. at 84–85, 650 S.E.2d at 470 ("The party asserting estoppel must show . . . a prejudicial change of position in reliance on the conduct of the party being estopped."). The only testimony concerning Father's reliance on the purported agreement occurred during the following colloquy:

> Counsel: "Now, you testified, [t]hat your ex-wife told you to make payments of $240.00? Did you rely upon what she told you?"
>
> Father: "I did. I relied upon her."

The family court found Father detrimentally relied on the purported agreement in the way he conducted his personal finances. The court further indicated Father "would have taken a different approach" had he known Mother would enforce the entire arrearage amount. Additionally, Father argues on appeal that he relied on the purported agreement in paying for Child's insurance and travel expenses, and by not seeking legal counsel to have the agreement formalized. However, Father presented no evidence regarding the manner in which he conducted his personal finances to the family court, nor did he claim that he chose to provide Child with insurance and travel expenses in reliance on the reduced child support payments. Thus, Father failed to establish the third element of equitable estoppel. Therefore, the family court's findings are not supported by the evidence in the record.

Because the evidence does not support the application of equitable estoppel, Mother cannot be estopped from asserting her claim to the full amount of child support arrearages. As such, the family court's reduction of the total child support arrearages owed by Father constitutes a retroactive reduction in child support, which

is precluded by statute. *See* § 63-17-310 ("No such [child support] modification is effective as to any installment accruing prior to filing and service of the action for modification."); *Harris*, 307 S.C. at 354, 415 S.E.2d at 393 ("[The precursor to section 63-17-310] was enacted to effect compliance with federal child support enforcement procedures *prohibiting retroactive modification of child support arrears . . . .*" (first emphasis added)). Accordingly, the family court erred in reducing the arrearages.

Father argues the family court did not err in retroactively reducing child support because parents may make private agreements altering the amount of court-ordered child support without court approval. We disagree. Even if Father could demonstrate that such an agreement existed, it would be unenforceable absent family court approval. *See Peebles*, 279 S.C. at 616, 310 S.E.2d at 825 ("[W]he[n] a divorce decree has set the amount [that] a parent is to pay in child support[,] the parties to the decree cannot themselves reduce the amount. *Court approval is required*." (emphasis added)). Additionally, Father argues the family court may *retroactively* reduce child support "if altered circumstances show such alteration to be equitable."[10] This argument is meritless, as our supreme court has specifically held "the statute does not bar retroactive child support *increases* in special circumstances . . . ." *Harris*, 307 S.C. at 353, 415 S.E.2d at 392–93 (emphasis added). Conversely, the court interpreted "[the precursor to section 63-17-310] as expressing the legislative intent that *the retroactive bar apply only to arrears that have accrued at the time a petition for modification is filed*." *Id*. at 354, 415 S.E.2d at 393 (emphasis added).

Based on the foregoing, the family court erred by reducing Father's child support arrearages, and Mother is entitled to the stipulated total of $17,430.00 in arrearages.

## II.  Arrearage Interest

Mother argues the family court erred in denying her interest on the child support arrearages because such interest is required as a matter of law even when the pleadings do not request such relief. Father concedes the general rule is that simple interest begins to accrue on past due child support from the date of each missed

---

[10] Father relies on *White v. White*, 290 S.C. 515, 351 S.E.2d 585 (Ct. App. 1986), for this proposition. However, the court in *White* specifically held the family court had "the power to modify a decree as to installments of *alimony* [that] have already accrued." *Id*. at 520, 351 S.E.2d at 588 (emphasis added).

payment. However, Father argues the family court properly declined to award Mother interest under the doctrine of equitable estoppel. We agree with Mother.

Pursuant to section 34-31-20(B) of the South Carolina Code (Supp. 2004),[11] "All money decrees and judgments of courts enrolled or entered shall draw interest according to law." This statute was applied to family court awards in *Casey v. Casey*, where our supreme court found that "fixed awards of money for equitable distribution shall accrue interest at the post-judgment rate from the date of the judgment, or in the case of specified periodic payments, from the date each payment becomes due and owing." 311 S.C. 243, 245–46, 428 S.E.2d 714, 716 (1993). Our supreme court extended this rationale to child support payments in *Edwards v. Campbell*, holding "the *Casey* principle applies to periodic payments such as child support, and the interest is calculated on each installment from the time each payment became due." 369 S.C. 572, 577, 633 S.E.2d 514, 516 (2006). Furthermore, our courts have indicated that, because such interest is mandated by statute, parties do not have to include a demand for it in their pleadings. *See Calhoun v. Calhoun*, 339 S.C. 96, 102, 529 S.E.2d 14, 17 (2000) ("Whe[n] the law allows interest as a matter of course, it is unnecessary to make demand for it in the pleadings.").

As indicated previously, the family court erred in finding Father satisfied the elements of equitable estoppel.[12] Accordingly, the family court erred in applying equitable estoppel to deny Mother's claim for interest on the arrearages. Additionally, the family court erred in finding Mother was not entitled to interest because she did not include a claim for it in her pleadings and presented no evidence on the issue. *See Calhoun*, 339 S.C. at 102, 529 S.E.2d at 17 ("Whe[n] the law allows interest as a matter of course, it is unnecessary to make demand for it in the pleadings."). Therefore, we find Mother was entitled to interest.

We note that the original divorce order did not specify a post-judgment interest rate for missed child support payments. Thus, the interest rate is equal to the statutory rate at the time the action accrued. *Casey*, 311 S.C. at 246, 428 S.E.2d at 716 (stating that when "no contrary provision is made by the decreeing court, a domestic money judgment bears post-judgment interest at the statutory rate"). Because Mother instituted the divorce action in 2002, the applicable statutory rate is twelve percent a year. *Collins Music Co. v. IGT*, 365 S.C. 544, 552, 619 S.E.2d 1,

---

[11] Because Mother instituted the divorce action in 2002, we refer to the version of the statutory provision in effect at the time.

[12] *See supra* Section I.

4 (Ct. App. 2005) (indicating that under the prior version of section 34-31-20(B), the interest rate for causes of action accruing between January 1, 2001, and March 21, 2005, was "twelve percent a year" (quoting S.C. Code Ann. § 34-31-20(B) (Supp. 2004))). Additionally, such interest should be simple rather than compound. *See Edwards*, 369 S.C. at 577–78, 633 S.E.2d at 517 (indicating statutory interest is simple interest unless the Legislature indicates otherwise). As such, Mother is entitled to simple interest at a rate of twelve percent per year calculated on each installment from the time each payment became due. *Id*. at 577, 633 S.E.2d at 516 ("[T]he *Casey* principle applies to periodic payments such as child support, and the interest is calculated on each installment from the time each payment became due.").

## III.    Child support modification

Mother argues the family court erred in refusing to increase the amount of Father's current child support obligation established in the divorce decree because the parties' changes in income, new marriages, and new children constituted a material change in circumstances. Father argues the family court did not err in refusing to modify his child support obligation because there was no material change in circumstances. We agree with Father.

> The family court has the authority to enforce the provisions of any decree, judgment, or order regarding child support of a court of this State . . . . This authority includes the right to modify any such decree, judgment, or order for child support as the court considers necessary upon a showing of changed circumstances.

S.C. Code Ann. § 63-17-310. "The issue of child support is subject to continuing review by the family court." *Fischbach v. Tuttle*, 302 S.C. 555, 556, 397 S.E.2d 773, 773 (Ct. App. 1990). Accordingly, "[a] family court has authority to modify the amount of a child support award upon a showing of a substantial or material change of circumstances." *Miller v. Miller*, 299 S.C. 307, 310, 384 S.E.2d 715, 716 (1989). "A substantial or material change in circumstances might result from changes in the needs of the children or the financial abilities of the supporting parent to pay among other reasons." *Id*. at 310, 384 S.E.2d at 717. "The burden is upon the party seeking the change to prove the changes in circumstances warranting a modification." *Id*. at 310, 384 S.E.2d at 716. "Once a substantial and material change in circumstances is found, the court must review the facts and circumstances in order to determine an appropriate amount of child support." *Id*. at 312, 384 S.E.2d at 717.

In determining whether a party is entitled to modification, "[t]he fact alone that a parent has remarried and had other children is not sufficient to show a change of circumstances warranting modification of child support." *Fischbach*, 302 S.C. at 557, 397 S.E.2d at 774. "Further, general testimony regarding increased expenses, without specific evidentiary support, is an insufficient showing of changed circumstances." *Upchurch v. Upchurch*, 367 S.C. 16, 26, 624 S.E.2d 643, 648 (2006), *disapproved of on other grounds by Miles v. Miles*, 393 S.C. 111, 711 S.E.2d 880 (2011). Moreover, "changes in circumstances within the contemplation of the parties at the time the initial decree was entered do not provide a basis for modifying a child support award." *Miller*, 299 S.C. at 310, 384 S.E.2d at 717.

We find the family court properly refused to increase the amount of Father's child support obligation because Mother presented insufficient evidence of a material change in circumstances. Mother asserted Father's income increased from the time of the original divorce decree but did not submit any evidence regarding Father's prior income. Similarly, while Mother testified to being unemployed, she did not present any evidence indicating her income at the time of the divorce decree and, on cross-examination, Mother conceded that her expenses were being covered by her current husband. Additionally, while Mother testified that she also has a two-year-old child, she did not submit any evidence that supporting her two-year-old child affected her ability to support Child, and she conceded that her husband was covering the daycare expenses. *See Fischbach*, 302 S.C. at 557, 397 S.E.2d at 774 ("The fact alone that a parent has remarried and had other children is not sufficient to show a change of circumstances warranting modification of child support."). Accordingly, we conclude that Mother did not submit sufficient evidence to entitle her to an increase of Father's child support obligation.

## IV. Attorney's fees

Mother argues the family court erred in awarding Father attorney's fees. Father argues the family court properly awarded him attorney's fees because 1) Father is supporting two separate children and a spouse; 2) Mother's living expenses are being paid by her new spouse; and 3) Mother refused to accept Father's settlement offer. We agree with Mother.

"In determining whether an attorney's fee should be awarded, the following factors should be considered: (1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; (4) effect of the attorney's fee on each party's standard of living." *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). However, while it is a factor to consider, a "[b]eneficial result alone is not dispositive of whether a party

is entitled to attorney's fees." *Upchurch*, 367 S.C. at 28, 624 S.E.2d at 649. Similarly, in determining a reasonable amount of attorney's fees, the family court must consider: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; (6) customary legal fees for similar services." *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

Here, the family court denied Mother's request for attorney's fees, finding Mother did not present any testimony or affidavits regarding the amount of fees she was seeking.[13] Conversely, the court found Father was entitled to $5,200 in attorney's fees. In reaching this conclusion, the court noted that Father had obtained beneficial results by way of the court's ruling as to the amount of arrearages, and the court's denial of interest on the arrearages and child support modification. Additionally, the court imputed a gross monthly income of $2,860 to Mother and noted that all of her living expenses were paid by her husband. Finally, the court determined that Mother's position in this case was unreasonable. The court then ordered that Mother pay Father's attorney's fees within ninety days.

In granting Father attorney's fees, we find the family court improperly applied the *E.D.M.* factors by placing too much emphasis on the beneficial results obtained by Father at the expense of the other factors. *See Upchurch*, 367 S.C. at 28, 624 S.E.2d at 649 ("Beneficial result alone is not dispositive of whether a party is entitled to attorney's fees."). First, the family court made no determinations concerning Father's ability to pay his own attorney's fees. Father's financial declaration indicated he was earning $4,093 in gross monthly income. As such, Father was more than capable of paying his own attorney's fees. Second, while the court considered Mother's financial condition and imputed income, the court failed to consider her income relative to Father's. Assuming the family court properly imputed $2,860 of gross monthly income to Mother,[14] her gross yearly income would equal $34,320. Using the $4,093 of gross monthly income in Father's financial declaration, his gross

---

[13] Despite her failure to present evidence concerning her attorney's fees, Mother contends her claim is preserved by the filing of her motion to reconsider, which included the issue of attorney's fees. However, Mother has not included the motion to reconsider or the corresponding order denying her motion in the record on appeal. *See* Rule 210(h), SCACR ("[T]he appellate court will not consider any fact [that] does not appear in the Record on Appeal.").

[14] *See Patel v. Patel*, 359 S.C. 515, 532, 599 S.E.2d 114, 123 (2004) ("It is proper to impute income to a party who is voluntarily unemployed or underemployed."). Mother has not challenged the imputation of income on appeal.

yearly income would equal $49,116. Thus, Father was in a better position to pay his attorney's fees than Mother. Third, the family court did not consider the effect of paying Father's attorney's fees on Mother's standard of living. The family court found Mother presented no testimony concerning how payment of Father's attorney's fees would affect her standard of living. However, we believe this factor can be evaluated by looking to the financial information in the record. The $5,200 attorney's fees award constitutes roughly fifteen percent of Mother's gross yearly income, and paying the fees would leave her with $29,120. Conversely, the attorney's fees constitute roughly ten percent of Father's income, and paying them would leave him with $43,916. Additionally, because the family court ordered Mother to pay the fees within ninety days, she would only have $8,580 of gross income to pay $5,200 of fees. Thus, the fees would have a greater impact on Mother's standard of living than Father's. Accordingly, the family court erred in finding Father was entitled to attorney's fees.

Moreover, because we reverse the beneficial results obtained by Father, attorney's fees should be reconsidered. *See Rogers v. Rogers*, 343 S.C. 329, 334, 540 S.E.2d 840, 842 (2001) ("[Because] the beneficial result obtained by counsel is a factor in awarding attorney's fees, when that result is reversed on appeal, the attorney's fee award must also be reconsidered."). However, because Mother did not present testimony or affidavits regarding her attorney's fees at trial, and because we do not find either party to be in a superior financial position to pay the other's attorney's fees, we find that each party should be responsible for paying their own attorney's fees. *See Mazzone v. Miles*, 341 S.C. 203, 214, 532 S.E.2d 890, 895 (Ct. App. 2000) (indicating the family court properly refused the mother's request for attorney's fees after finding "neither party [wa]s in a superior financial position to pay for the other's attorney['s] fees").

## CONCLUSION

Based on the foregoing, we affirm the family court's refusal to modify Father's child support obligation and reverse the family court's reduction of Father's arrearages, the denial of Mother's claim for interest, and Father attorney's fees award. Accordingly, this case is remanded for a calculation of interest on Father's child support arrearages consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**SHORT and THOMAS, JJ., concur.**